John W. YOUNG, Commissioner, Kentucky Department of Labor and Custodian of the Special Fund, Appellant,

v.

Jeff CHAPMAN et al., Appellees.

Court of Appeals of Kentucky.

Feb. 19, 1971.

Martin Glazer, James F. Perkins, Dept. of Labor, Frankfort, for appellant.

E. R. Hays, Baird & Hays, Pikeville, for appellees.

DAVIS, Commissioner.

This is a workmen's compensation proceeding in which the controversy on appeal is between the Special Fund and the employing companies as to where the liability for Chapman's admitted total, permanent disability shall rest. The Board imposed the award for total, permanent disability upon appellee Leigh Coal Company, one of Chapman's prior employers, and dismissed the claim against the Special Fund and D. R.T. Coal Company, Inc., another prior employer of Chapman. The employers (whose liability is insured by the same carrier, which carrier is represented by the same counsel) petitioned the circuit court for review of the Board's award. The circuit court upset the award of the Board and ordered the proceedings remanded to the Board with directions to make an apportioned award for total, permanent disability, 10% against appellee D.R.T. Coal Company and 90% against the Special Fund. The Special Fund challenges that judgment on this appeal.

The problem presented is the ever-recurring one pertaining to the proper application of KRS 342.120(1) (b). That statute prescribes joining the Special Fund as party to workmen's compensation proceedings, with a view to apportionment, if it appears that:

> "The employe is found to have a dormant non-disabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease."

Some of the problems attendant upon application of this statute are presented in three decisions rendered February 12, 1971: Kentucky Convalescent Home v. Henry, Ky., 463 S.W.2d 328; Appalachian Regional Hospitals, Inc. v. Brown, Ky., 463 S.W.2d 323; and Young v. Long, Ky., 463 S.W.2d 326.

While Chapman was working for Leigh Coal Company, he suffered a back injury on July 18, 1966. He was off work until August 9, 1966, on which date he began working for D.R.T. Coal Company instead of Leigh Coal Company. While employed

by D.R.T. he sustained another back injury on August 12, 1967, and has not worked since that time. Each of these injury incidents occurred as Chapman was lifting material on the job and was not otherwise traumatic in nature.

Dr. Russell Meyers examined Chapman in August 1967, and reached a diagnosis of:

" * * * early or incipient herniated intervertebral disk at the 5th lumbar and 1st sacral levels of the spine producing a slight degree of radiculitis of the 1st sacral root of the lower extemity."

At an examination of Chapman by Dr. Meyers on October 3, 1967, the clinical signs and symptoms exhibited by Chapman caused the doctor to recommend surgery, which was performed on November 15, 1967, and described by Dr. Meyers as follows:

"A hemilaminectomy was performed on the left side at the fifth lumbar level and two herniated intervertebral disks were encountered and thoroughly removed by rongeurs and curettes. One of these was at the 4th and 5th lumbar interspace and the second at the 5th lumbar and 1st sacral interspace."

Dr. Meyers said that:

"The x-ray findings prior to surgery revealed a mild to moderate degree of hypertrophic osteoarthritis and a loss of lumbar physiological curve which was consequent to the degree of paravertebral muscle spasm clinically demonstrated."

Dr. Meyers opined that the hypertrophic osteoarthritis anteceded the injury incident by several years. He regarded the hypertrophic osteoarthritis condition as "asymptomatic." Dr. Meyers expressed the view that the antecedent condition had produced no manifest disability prior to the injury, "although it rendered the low lumbar region of the spine more vulnerable to after-

coming strains and stresses which might otherwise be tolerated without the emergence of signs and symptoms." The doctor said that the lifting incidents described by Chapman could not have produced herniation of intervertebral disks at either or both levels described in an otherwise healthy back. Dr. Meyers was not asked, nor did he ever testify, as to whether he classified Chapman's antecedent condition as a disease condition.

On April 21, 1969, the Board appointed Dr. Robert Keisler, pursuant to KRS 342.-121, to examine Chapman and report his findings. In his report to the Board Dr. Keisler noted:

"IMPRESSION: Transitional lumbar vertebra with scoliosis. Post laminectomy syndrome L4–L5, S1 and severe emotional disturbance."

Exceptions to Dr. Keisler's report were filed, but the Board passed to the merits its ruling on the exceptions in an order permitting Dr. Keisler's deposition to be taken.

In his deposition Dr. Keisler elaborated on the "impression" which he had previously reported, being questioned, and answering:

"Q. Now, you stated that he had a transitional lumbar vertebra. What is that, Doctor?

A. Transitional means an abnormality in forming at that level of the spine. And in this case it means that there was a vertebra at the level of the fifth lumbar one which was a portion of the sacrum. It means there was an error in the separation segmentation of the lumbar spine.

Q. Was this a pre-existing thing?

A. Yes, this is a—this was formed during the development of the spine and therefore congenital."

**924**

Dr. Keisler, when asked about arthritis in Chapman's spine, observed that X rays showed some minor changes at the lower lumbosacral disk which he regarded as "a scoliosis change from the disk degeneration" rather than arthritis.

In its findings the Board noted that Dr. Keisler rated Chapman as having a functional disability of 75% to his body as a whole, 75% of which was caused by the injury of July 18, 1966, and 25% of which was caused by the arousal into disabling reality of a pre-existing congenital anomaly. As noted by the Board, Dr. Keisler regarded the August 12, 1967, incident as merely a continuation of the problem caused by the first injury. The Board concluded that the congenital anomaly was not a disease condition within the meaning of KRS 342.120. The Board recognized the presence of an emotional condition, but concluded that exclusive of the anomaly and the emotional condition there was medical evidence that Chapman suffered a functional disability of 50% to his body as a whole by reason of the incident of July 18, 1966, and translated that functional disability into occupational disability of 100%. Since the July 18, 1966, incident occurred while Chapman was employed by the Leigh Coal Company, the Board imposed full liability on Leigh.

The Board based its findings upon competent medical testimony. The circuit court was not authorized to substitute its conclusions for those of the Board, since the evidence was not so strong as to require an opposite finding. KRS 342.-285(3).

Since the Board properly found that no dormant, nondisabling, disease condition existed, it properly absolved the Special Fund from liability.

The judgment is reversed with directions to enter a new judgment affirming the award of the Board.

All concur.