STATE of Missouri, Plaintiff-Respondent,

v.

Denford JACKSON, Defendant-Appellant.

No. 35622.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 11, 1975.

Arthur Kreisman, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard A. Heidenry, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

Defendant-appellant, Denford Jackson, was found guilty by a jury and sentenced by the court on June 29, 1973, to two years in the department of corrections for the offense of burglary in the second degree. Section 560.070, RSMo.1969, V.A.M.S. He appeals. For reasons hereinafter stated we affirm.

Since defendant questions the sufficiency of the evidence, we will review the evidence in the light most favorable to the State together with all reasonable inferences deducible therefrom and will disregard defendant's evidence except as it aids the cause for the State.

A jury could reasonably find the following facts. The Firestone Tire and Rubber Company located at 5901 Delmar Blvd. in the City of St. Louis was burglarized on the evening of July 12, 1972. At about 6:00 p. m. the operating manager of the Firestone Store, Mr. George Bughman, closed the store for the day, secured the premises by checking the building, observed no broken windows on the west and rear of the building, and observed that the doors were locked and the windows secure.

At approximately 9:00 (9:01) p. m. Officer George Jackovich of the City of St. Louis received a radio assignment that the alarm was sounding at the Firestone Store. At the time he was about a block away. He proceeded toward the address, pulled into the driveway in front of the store and observed two males "run from around the building and they ran east across the lot in front of my car." His lights were on; the two men ran "past my car, the front of my car." They ran from around the side of the building and ran east on Delmar north on Hamilton. He alighted from the car, shouted at the two, and was "going to attempt to chase them, but I observed another subject walking around the side of the building." The officer described the two men who ran in front of the car—"one of them was a Negro male about 35, five foot ten, he had a blue jacket on and a mustache and beard." He had a "mustache and a goatee, bushy." The other man was about five foot seven or eight, about seventeen years of age, with no facial hair. The two men were about ten feet away from the front of the car, the taller man being closest to the car. Officer Jackovich identified the defendant in the court room as the taller man who ran in front of his vehicle. At trial when asked if he was positive that Jackson was the subject he saw run in front of the police vehicle, he replied, "Yes."

When the officer alighted from his vehicle and shouted to the two to stop, he observed another [a third] man walking around the west side of the Firestone building. The officer walked toward this third man. He was carrying a box in his arms and walking toward an automobile (1966 four-door, dark or black Chrysler) parked nearby. The man placed the box which he was carrying on "a door ledge of the right passenger door." The window of the automobile was rolled down, and he "placed the box on the ledge." The man looked in the direction of the officer and "ducked" behind the car. The officer walked around the auto and placed this third man under arrest. After the officer

took the third man into custody, he looked to the west wall of the Firestone building and saw a fourth man "pushing another box out of a small window" of the west wall of the building. He then went to his radio and called for another police car.

At about the time Officer Jackovich called for assistance, he also called the station which made a call to the Firestone people. Within an hour Mr. George Bughman, operating manager of the Firestone Store who was employed there on July 12, 1972, arrived at the scene. He testified that he arrived sometime after 9:00 p. m. together with the assistant manager. When he reached the scene, the police had one person in custody, and he found two Firestone batteries (5″ x 6–7″) in cartons, one in the window ledge of the building and one resting on the passenger side window area of the car.

On cross-examination, Mr. Bughman was asked whether or not on a previous trial he had testified that he received a call and returned to the store at 7:00 p. m., rather than 9:00 p. m. His reply was that he did not believe he had said 7:00 p. m., but "All I know, that I came back in the evening after the police called me. That was clear back last July. I can't remember that far back."

On redirect examination, Mr. Bughman was asked whether a "juvenile" was found in the building. He replied, "Yes." After an objection, Mr. Bughman described this person as "13 years old, small boned, Negro, that's about all, very small," whom he discovered subsequent to his arrival.

At the scene when Officer Jackovich radioed for assistance and within a few minutes Detectives Joseph Hoyer and Richard Kukuljan came. These two officers who were nearby were driving west on Delmar when Officer Hoyer noticed Officer Jackovich in "pursuit of a subject." They went to his aid. They also proceeded to make an investigation of the immediate area, and observed a "dark or black" painted Chrysler automobile sitting in the parking lot and found "on the right front window of the automobile ledge of the window" a battery. In the back seat they found a set of license plates, and through the computer determined that the automobile was registered in the name of the defendant Denford Jackson of 6217 (5217?) Cabanne. Jackson was not seen on the premises of Firestone, but the officers proceeded to Jackson's home. As they arrived, they met a University City police officer, who was there because Mr. Jackson had reported his Chrysler stolen. Officer Hoyer advised Jackson, when he opened the door, that he was under arrest for burglary. According to Officer Kukuljan, Jackson was "sweating very heavily and breathing hard." Jackson was in a sleeveless Zebra striped undershirt and wearing dark trousers. As they left the premises, according to the officers, Jackson "picked up" a blue windbreaker type jacket off the couch and put it on to go to the station. The officer conveyed Jackson to the station and he was booked for the burglary charge.

Officer Kukuljan had made an investigation of the car that was on the lot and found that the "keys were in the ignition and it wasn't wired. The ignition wasn't punched out in any way. The keys were in the ignition." The Chrysler was subsequently towed from the scene to the police garage, and eventually after about six weeks Officer Kukuljan, after checking with the circuit attorney's office, turned the automobile and keys over to Mr. Jackson after he presented evidence of title.

The defendant's defense consisted of his own testimony and that of one Charlesetta Pernell. Mr. Jackson testified that he was a barber and had worked in his father's barber shop since 1958. On July 12, 1972, he took a bus, went to work about 6:20 a. m., worked all day and left work about 6:40–6:45 p. m. He took a cab and went to some friends by the name of Pernell on Maple Avenue for the evening. He stated that he "received a call" to have dinner "and a few drinks and play a few cards."

He arrived at the Pernells' about 7:00 p. m. and left "about a fraction after nine." He walked home and arrived about 9:30 p. m. When he arrived home, he went into the back yard and noticed his car, a dark green '66 Chrysler which had been parked there about a month, was gone. The license plates had expired the previous June. He had taken the plates off and placed them in the "back seat on the floor." He called the University City Police to report "that my car was missing." The police came, advised him of his rights and stated he was under arrest for burglary. He testified that he was handcuffed and the officers "reached and grabbed the coat off the rack" and threw it around his shoulders—a blue jacket, which he had never worn before, and which he wore to the station. Jackson indicated he had an account at the Firestone Store and was there earlier in the day to pay a bill, but denied any participation in the burglary.

He testified also that he was six feet and one-quarter, and at the time of the alleged burglary weighed 210 pounds, and had his hair "braided" not bushy. He did admit he had a beard and a mustache. He also testified that when he obtained the automobile from the police garage, the ignition had been tampered with and he was not able to start his car with his keys, but had to have it towed home by a friend. He denied that the police gave him the keys when they returned the car to him.

He admitted that he was convicted some nineteen years previously for assault, burglary and larceny, but had not been in any "trouble" since then.

Mrs. Pernell corroborated his testimony as to being at her home that evening at her invitation and as to the times of arrival and departure.

The defense also called the court reporter in the previous trial. She testified that Mr. Bughman had stated that the police called him about 7:00–7:30 p. m., but he could not remember exactly and could not remember if it was after 8:00 p. m.

After the defendant moved for a judgment for acquittal and the court denied the motion, the court instructed the jury that all persons are equally guilty who act knowingly together with a common intent in the commission of an offense, and an offense committed jointly by two or more persons is the act of each and all. The court also gave Instruction No. 4, an alibi instruction.[1]

During the prosecutor's closing argument, reference was made to the following: "There was a *juvenile* inside who was handing a box out the window and there was a *juvenile* at the car placing a battery on the window ledge there. There were two other subjects Denford Jackson and another *juvenile* running away from the scene. . . ." (Emphasis added.)

The jury unanimously returned a verdict of guilty, and after the defendant's motion for new trial was overruled and allocution granted, the defendant, on June 29, 1973, was sentenced to two years. He was permitted to appeal as a poor person.

On this appeal appellant-Jackson raises numerous assignments of error. He contends: (1) That there was no evidence that defendant committed the burglary, thus it was error to convict him; (2) that error was committed "by the State's failure to endorse and produce as witnesses [those] persons who allegedly committed the offense" and the court erred when it "permitted the state to refer to such persons . . . without giving their names

1. "INSTRUCTION NO. IV One of the issues in this case, on which the State has the burden of proof, is whether the defendant was present at the time and place the offense is alleged to have been committed. If all of the evidence or any lack of evidence in this case leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed, then you must find him not guilty."

and addresses"; (3) that "suppression of evidence such as non-disclosure of witnesses known to the prosecution or statements of witnesses known to the prosecution which are not revealed to the defendants [sic] are grounds for reversal where such evidence is favorable to the accused"; (4) there was insufficient evidence to support the "instruction on burglary . . . since . . . there was absolutely no showing that . . . defendant broke into the Firestone building with intent to steal . . . ."; (5) "The testimony of . . . [Mr.] Bughman . . . was diametrically opposed to the testimony of prosecution's principal witness, Officer Jackovich, which served to destroy the State's case"; (6) "It was reversible error for the State to refer to juveniles stealing property in the examination of its witnesses and in final argument"; and (7) the court erred in giving Instruction IV on alibi.

The defendant's points can, we believe, be summarized and synthesized as follows:

(1) The trial court erred in not sustaining the defendant's motion for acquittal, since the State did not make a submissible case (Points I and IV);

(2) That there was error because the State did not endorse and produce the persons who allegedly committed the offense, thus suppressing evidence favorable to the accused (Points II and III);

(3) That the testimony of Mr. Bughman to the effect that he arrived at the Firestone Store earlier than 9:00 p. m. as testified to in an earlier trial, hence this testimony being at war with Officer Jackovich's testimony destroyed the State's case (Point V); and

(4) The reference to juveniles in the examination of certain witnesses and in the

prosecutor's closing argument shows that "other offenses" were committed (contributing to the delinquency of a minor), hence the rule prohibiting the admission of other crimes was violated (Point VI).[2]

(5) The court erred in giving the alibi instruction.

None of the points raised is meritorious, hence we affirm the judgment of conviction.

■ 1. Defendant's major point is that no submissible case was made to submit to the jury the issue of burglary in the second degree. In determining this issue, we are governed by the rule that the facts in evidence and all favorable inferences to be drawn therefrom are to be viewed in the light most favorable to the state and evidence to the contrary is to be disregarded. State v. Todd, 477 S.W.2d 725, 728 (Mo. App.1972).

■ In this case the theory of the state was that the defendant acted together with others in committing the burglary. It is well settled that all persons who are present at the commission of an offense and participating therein are principals and in such circumstances the act of one is the act of all. All persons who act together with a common intent and purpose in the commission of an offense are equally responsible therefor. State v. Lee, 404 S.W. 2d 740, 747 (Mo.1966). A person who aids and abets the commission of a criminal offense is guilty as a principal. The defendant correctly states the general principle that evidence that an accused had an opportunity to commit an offense which merely raises a suspicion and gives rise to conjecture is insufficient to convict, and mere presence of an accused, while to be considered in determining whether a person is guilty, is insufficient to sustain a

---

2. Most of the points raised by the appellant in his brief do not comport with the Supreme Court rules, since they set forth mere abstract statements of law and do not "briefly and concisely" "state . . . what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous . . . ." Rule 84.04(d), V.A. M.R.

conviction unless in addition the defendant in some fashion associated himself with the venture or participated in the crime in some manner as something he wished to bring about or to make the offense succeed. State v. Castaldi, 386 S.W.2d 392, 395 (Mo.1965); State v. Cain, 507 S.W.2d 437, 441 (Mo.App.1974). Proof of any form of active participation suffices to support a conviction. Proof of conduct before, during or after the offense are circumstances from which one's participation in the offense may be inferred. State v. Corbin, 186 S.W.2d 469, 471 (Mo.1945). Although isolated facts viewed individually may not support more than a suspicion of guilt, State v. Castaldi, supra; State v. Irby, 423 S.W.2d 800, 803 (Mo.1968), a conviction may rest upon accumulated, interdependent facts, no one of which alone may create more than a suspicion of guilt. State v. G'Sell, 497 S.W.2d 882, 884 (Mo. App.1973).

We conclude that tested by these legal principles there was sufficient evidence to submit the issue of defendant's participation in the offense to the jury. Officer Jackovich testified that Jackson was one of two men who ran in front of his police car; the headlights were on and the officer positively identified the defendant as one of the two men who ran around the building and in front of his vehicle. When the officers went to the apartment of the defendant, he was "sweating very heavily and breathing hard"; his Chrysler was on the Firestone lot, a battery was on the vehicle's window and the store had been broken into; the store was secure at the time Mr. Bughman left. The keys to the Chrysler were in the ignition, and the evidence was that it had not been tampered with. When all of the evidence is viewed in a light most favorable to the state, this record is sufficient to submit the case to the jury, and the court did not err in overruling the defendant's motion for judgment of acquittal. There was also sufficient evidence for the court to submit the verdict-directing instruction on burglary in the second degree, including entry with felonious and burglarious intent to steal. State v. Washington, 484 S.W.2d 267, 269–270 (Mo.1972).

2. Defendant complains that the state did not endorse or produce the persons who allegedly committed the offense, thus "suppressing" evidence favorable to the accused. He relies principally on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and State v. Berstein, 372 S.W.2d 57 (Mo.1963). He contends, "The authorities therefore firmly establish that any failure or omission on the part of the prosecution to reveal to the defendant's counsel the names, and presumably the addresses, of witnesses known to the prosecution and their statements and confessions . . . constitutes reversible error and entitles defendant to a new trial . . . ."

Defendant paints with much too wide a brush. There is no such sweeping principle. Brady v. Maryland, supra, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. But in order to be error, it must be alleged and proved that the state knowingly used false evidence or wilfully suppressed evidence. State v. Nolan, 499 S. W.2d 240, 250–251 (Mo.App.1973); Coles v. State, 495 S.W.2d 685, 687 (Mo.App. 1973). Deliberate deception by the presentation of known false evidence is incompatible with the rudimentary demands of justice. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). There is no such showing of deliberate suppression of evidence favorable to the defendant or deception. The defendant made no pre-trial motion; he raises this issue for the first time on appeal. Even so, there is no requirement that the state initially furnish the defendant with a list of witnesses. State v. Swiggart, 458 S.W.2d 251, 252–253 (Mo.1970); State v. Gamache, 519 S.W.2d 34 (Mo.App., St. Louis District, 1975). And there is no evidence that the state suppressed evidence favorable to the accused or used false evidence. This point must be ruled against defendant. State v.

Berstein, supra, relied upon by defendant, is inapposite.

3. Defendant contends that the testimony of Mr. Bughman on the first trial to the effect that he arrived at the Firestone Store earlier than 9:00 p. m. was inconsistent with his testimony at trial and with Officer Jackovich's testimony that he responded to a call at 9:01 p. m. He therefore contends that "under the authorities the State failed to make a prima facie case by reason of the obvious dispute and contradiction of a material fact on the part of its own prosecution witness."

Mr. Bughman testified that after receiving a call from the police, he did return to the store, but that "all I know, that I came back in the evening after the police called me. That was clear back last July. I can't remember that far back."

■■■ This does not come within the rule cited by defendant that where a party relies on the testimony of a single witness to prove a given issue and the testimony is contradictory and conflicting with no explanation and no other fact tending to show which version of the evidence is true that no case is made. We do not believe as defendant contends that the state's case was destroyed. This testimony was not at war with the fundamental theory of the state's case. The weight and credibility of Mr. Bughman's testimony was for the jury to determine. State v. Nimrod, 484 S.W. 2d 475, 479 (Mo.1973). A party is not bound by testimony as to estimates of time. Fisher v. Gunn, 270 S.W.2d 869, 874 (Mo. 1954).

4. Defendant contends that references to *juveniles* in the examination of certain witnesses and in the prosecutor's closing argument shows that the defendant was engaged in "other crimes"—"that defendant was also contributing to the delinquency of minors," hence reversible error was committed.

Defendant contends that it is error for the prosecution in its argument to infer that defendant committed a separate crime citing State v. Baber, 297 S.W.2d 439 (Mo.1956), and other decisions.

■■■ It is of course the well established rule that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt for which he is on trial. State v. Holbert, 416 S.W.2d 129, 132 (Mo. 1967); State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). Evidence of other crimes when not related to the cause on trial violates the defendant's right to be tried for the offense for which he is charged. State v. Taylor, 508 S.W.2d 506, 510 (Mo.App.1974).

■■■ But there are many exceptions to this general principle. One is where the circumstances are such as to constitute one continuous transaction in the accomplishment of a common design so that proof of one cannot be made without showing the facts, the entire facts are admissible, since they are regarded as part of the "res gestae." In such circumstances, the state is not required to nicely sift and separate the evidence. State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, 880 (Mo.1931); State v. Cox, 508 S.W.2d 716, 723 (Mo.App.1974).

■■■ This contention is without merit. The examination of witnesses relating to juveniles and the reference in argument did not refer to other crimes. References were made to the facts and circumstances surrounding the events at the Firestone Store that particular evening. It is difficult to reasonably conclude that such references established other crimes. The argument was within the scope of the evidence and there was no abuse of discretion on the part of the trial court.

5. Lastly, defendant contends that the court erred in giving Instruction IV because "in effect this instruction told the jury that the mere presence of defendant at the time and place of the offense compelled them to find him guilty," and the instruction also served to "confuse and mislead the jury . . .."

This point was not preserved for review. The defendant in his motion for new trial merely stated, "That the Court's instructions and each of them failed to set forth the law applicable to burglary in the Second Degree." Rule 27.20.

Notwithstanding, the defense was alibi. The defendant denied that he participated in the burglary, and testified that he was at the Pernell home. This was corroborated by Mrs. Pernell.

This instruction has continually withstood challenges similar to those raised by defendant. State v. Tyler, 454 S.W.2d 564, 568–569 (Mo.1970), and cases cited therein. Furthermore, this instruction does not differ significantly from MAI–CR 3.20. There is no error in this regard.

We have reviewed the entire record in this case, read the briefs and authorities relied upon by the parties, and conclude there was no error, hence affirm the judgment of conviction.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.