STATE of Missouri, **Respondent,**

v.

Antoine EDWARDS, **Appellant.**

No. 37099.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 13, 1976.

---

Allen I. Harris, Clayton, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Jefferson City, Charles L. Howard, Asst. Attys. Gen., Courtney Goodman, Jr., Pros. Atty., Thomas E. Dittmeier, Asst. Pros. Atty., Clayton, for respondent.

RENDLEN, Judge.

Antoine Edwards, convicted by a jury of attempted robbery, § 556.150 RSMo 1969, V.A.M.S., and sentenced to four years imprisonment, appeals that conviction. Appellant assigns as error: (1) sufficiency of the evidence to sustain the verdict; (2) admission into evidence of a gun found near the scene; (3) propriety of giving a flight in-

struction; and (4) coercing the jury by a "hammer" instruction and thereafter setting a specific time limit for the jury's deliberations. We affirm.

At about 9:30 a. m. on May 10, 1974, Joseph Vogel, proprietor of a shoe repair store on Sutter Avenue in University City, was working with his cousin in the rear of the store. Hearing the door open he stepped to the front, assuming a customer had entered. This assumption was quickly dispelled by Ronald Curry who threatened Vogel with a gun and demanded his money. Mr. Vogel moved to the back of the store to comply when apparently the robber leapt on the glass case separating them and the glass gave way beneath him. Curry then ran from the store pursued by Vogel who seized a club at the back of the store and chased him to the street. Curry, who ran north on the east side of Sutter[1] for a short distance then ran west across Sutter into an alley and was soon apprehended by police officers. Mr. Vogel testified the gun offered in evidence was that used in the robbery attempt.

That morning, Officer Gary Wade of the University City Police, driving north in a marked police car on Sutter Avenue, observed a 1967 Chevrolet parked just north of Vogel's Shoe Store on the east side of Sutter facing north, with its engine running and appellant sitting on the driver's side looking toward the front door of Vogel's Store. There were no other cars on the street at that time. Wade drove his police car beside appellant's, who looked over, saw the police car, sounded his horn several times and started north. Immediately Wade drove rapidly northward and made a u-turn with the police car blocking appellant's vehicle "headlight to headlight." Appellant attempted to drive around the police car but Wade pulled his revolver and ordered appellant out. Appellant complained the driver's door was stuck and asked permission to get out on the other side. As he did so, appellant fled but was promptly

caught by the officer. When appellant was attempting to drive away, Officer Wade saw Curry run from the front door of Vogel's Store ten, perhaps fifteen seconds after the horn sounded.

■ Appellant first contends the evidence was insufficient to justify the guilty verdict though not denying there was in fact a robbery attempt. At issue is the evidence of appellant's complicity in that robbery. When examining the record to determine the sufficiency of the evidence, we "view the facts in evidence and the inferences reasonably to be drawn from them in the light most favorable to the State, to determine whether there was substantial evidence to support the verdict." *State v. Williams,* 521 S.W.2d 29[1] (Mo. App.1975); *State v. Jackson,* 519 S.W.2d 551, 556[1] (Mo.App.1975). Though the evidence on this point was circumstantial, we are not unaware "a submissible case may be made on circumstantial evidence. But to warrant a conviction based on such evidence the facts and circumstances must (a) be consistent with each other, (b) be consistent with the hypothesis of guilt, (c) be inconsistent with innocence, and (d) point clearly to guilt as to exclude every reasonable hypothesis of innocence." *State v. Gamache,* 519 S.W.2d 34, 40[8] (Mo.App.1975); *State v. Grey,* 525 S.W.2d 367, 369[1] (Mo. App.1975); *State v. Whaley,* 512 S.W.2d 431, 433[1] (Mo.App.1974). "In a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, [sic] and they need not demonstrate impossibility of innocence." *State v. Maxie,* 513 S.W.2d 338, 343[5] (Mo.1974), cert. den. 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975). "The scope of our review extends only to a determination of whether there is sufficient substantial evidence to support the verdict. It is not our function or prerogative to weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is, a function of the jury." *State v. Achter,* 514 S.W.2d 825,

1. Vogel's Store is located on the east side of Sutter, a north-south street, and the alley Curry ran to lies north of Vogel's store.

826[2] (Mo.App.1974); *State v. Sherrill,* 496 S.W.2d 321, 323[2] (Mo.App.1973). "The law is clear that mere presence of an accused at the scene of an offense is evidence to be considered in determining guilt, but to sustain a conviction and to make a submissible case, something more than presence must be shown . . . To sustain a conviction, in addition to presence, it is necessary that some form of affirmative participation be shown. There must be some evidence to show that the accused participated. (citing cases) And any evidence showing affirmative participation is sufficient to support a conviction. Proof of conduct before, during or after the offense are circumstances from which participation may be inferred." *State v. Burks,* 521 S.W.2d 11, 15[2–6] (Mo.App.1975); see also *State v. Jackson, supra* at 557[5–7]; *State v. Turnbough,* 497 S.W.2d 856, 859[8–10] (Mo.App. 1973). Finally, though "isolated facts viewed individually may not support more than a suspicion of guilt, . . . a conviction may rest upon accumulated, interdependent facts, no one of which alone may create more than a suspicion of guilt." *State v. Jackson, supra* at 557[9].

■ We have in this case a number of individual circumstances which viewed separately would not support the verdict; collectively, however, they present a submissible case that appellant intentionally aided and abetted Ronald Curry in perpetration of an attempted robbery. First, appellant was parked with his motor running, the only car on the street at the time, very near the store where the robbery was taking place; second, appellant's attention was focused upon the door of Vogel's Store; third, immediately after appellant saw the police car he sounded his horn loudly several times and attempted to drive away; fourth, a few seconds after the sounding of the horn Curry ran out of the store running first northward toward appellant's car, then apparently seeing the police car in the process of stopping appellant's car, ran west across the street thence down an alley; and last, the jury could consider appellant's two at-tempts at flight as evidence of guilt. In sum, we believe these facts sufficient for the jury to infer appellant was acting in concert with Curry and the first contention of error is denied.

■ Appellant's second point as briefed, concerning the gun's admission in evidence, fails to comply with the requirement of Rule 84.04(d), V.A.M.R., by not showing wherein and why the court erred; see *State v. Foster,* 513 S.W.2d 657, 659[1] (Mo.App.1974), nor was this point included in the motion for new trial and therefore is not preserved for review. Examining for plain error we find none since Mr. Vogel testified the gun was that used to rob him; it was thus properly admitted as material evidence.

■ The next contention urges error in giving the flight instruction. MAI–CR 5.40 promulgated by the Missouri Supreme Court January 13, 1975, effective March 1, 1975, mandating that flight instructions no longer be given, is prospective in operation and the trial here was October 30–31, 1974, prior to the ban. Further, when justified under the evidence in cases tried prior to the rule's effective date, giving such instruction was not error. *State v. Coleman,* 524 S.W.2d 27, 31[7, 8] (Mo.App.1975); *State v. Connell,* 523 S.W.2d 132, 136–7[5–7] (Mo.App.1975).

■ The final contentions stem from related occurrences and will be treated together. Appellant complains the trial judge coerced the jury's verdict by (a) giving a "hammer instruction," and (b) by setting a specific time for the jury to return. The record discloses the jury retired to deliberate about 3:05 p. m. At 7:30 p. m. the court recalled them and inquired of the jury's division without indication whether the division favored conviction or acquittal. The foreman stated the jury was split "approximately 50/50." The court then gave additional instruction MAI–CR, 1.10 num-

bered instruction 11[2] directing the jury to continue deliberations.

There is nothing in this interchange indicating an attempt to coerce the verdict, and it goes without saying instruction MAI–CR 1.10 is approved as to form.

■ The jury was returned to the courtroom at 9:20 p. m. and the following occurred:

"THE COURT: Mr. Petty, I will address my question to you and if there are certain remarks that any other of the jurors want to communicate with the court at this time in line with various things that I want to discuss with you, you're welcome to do it.

I am aware of the fact that you have been deliberating for some time. In the instruction I gave you at about 7:30 I think it pretty well indicated what the criteria is with regard to the jury's extended deliberations.

Let me ask you this, Mr. Petty. Do you feel with some reasonable period of further deliberation the jury might be able to reach a verdict?

MR. PETTY: It is pretty hard to say, you're honor, but we have made some progress toward a decision which is different than the one we had before. It's more unanimous one way or another.

THE COURT: Would your feeling be that some further period of deliberations, say a half hour—its now 9:25 by the clock—say until 10 o'clock, would you feel that some resolution might be reached by that period of time?

MR. PETTY: I feel that by that period of time we would have, I believe have, established a resolution one way or another with reference to that fixed point.

THE COURT: Let's say in 40 minutes, do you think you can agree, *or agree that you are disagreed,* that you were unable to reach a verdict? (emphasis added)

2. A trial court may in its discretion give a hammer instruction. *State v. Rojano,* 519 S.W.2d 42, 44[9, 10] (Mo.App.1975); *State v.*

MR. PETTY: Yes, your honor.

THE COURT: Very well. Then I'll let you resume your deliberations and will see where we've gotten to by 10 o'clock. Thank you very much."

The jury resumed its deliberations and at about 10 o'clock indicated a decision had been reached. "[A]n inquiry by the trial judge to the jury after it has been in deliberation for a reasonable period of time as to how the members stand numerically, without indicating what party or result they favor, for the purpose of ascertaining whether there is a reasonable probability of an agreement is not coercive per se, but that the issue of coerciveness must be determined from the record of what was said and done at the time (citing cases)." *State v. Talbert,* 454 S.W.2d 1, 4–5[7] (Mo.1970). From a review of the transcript we find nothing to indicate that the court attempted to coerce a verdict. The court's question whether they could agree or agree to disagree by a fixed time clearly left open the option of deciding they might be unable to agree. "The fact that a verdict was reached does not tend to establish coercion." *State v. Smith,* 431 S.W.2d 74, 86[32] (Mo. 1968). Rather it seems the court's actions assured the jury they would not be compelled to deliberate beyond a reasonable hour, and thus offering a dissenting juror who wished to hold out an opportunity to do so. See *State v. Crawley,* 478 S.W.2d 344, 346[4] (Mo.1972). Appellant's Points IV and V are denied.

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.

Cook, 512 S.W.2d 907, 910[6] (Mo.App.1974); *State v. Foster,* 501 S.W.2d 33, 38[7, 8] (Mo. 1973).