STATE of Missouri, Respondent,

v.

Timothy CREWS, Appellant.

No. 40041.

Missouri Court of Appeals, Eastern District, Division Three.

June 19, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 1979.

Application to Transfer Denied Sept. 11, 1979.

Helton Reed, Jr., Sp. Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant was charged by information with attempted first degree robbery, armed criminal action and three counts of assault with intent to kill with malice. He was convicted on the charges for robbery, armed criminal action and one assault count. His appeal attacks certain instructions and the trial court's refusal to grant his motion for judgment of acquittal. We affirm.

Defendant's appeal arises out of the attempted robbery of Bogart's Tavern in St. Louis. About 11:00 p. m. two armed men, one wearing a ski mask, entered the crowded tavern. The masked bandit walked toward the bar, placed his pistol against the head of one of the customers, off-duty police officer Robert Schaefer, and demanded money from the barmaid. The other would-be robber, armed with a shotgun, stood on a radiator next to the front door and reconnoitered the patrons. As he turned his head toward his assailant, Officer Schaefer noticed through a window that a third person dressed in dark clothing was pacing outside near the entrance. When the barmaid's response to his demand for money was not sufficiently swift, the masked robber fired a shot in her direction. The report prompted riposte from another off-duty policeman, Walter Serb, who ran from the rear of the tavern to investigate. Officer Serb was immediately shot and seriously wounded by the robber posted on the radiator. The robbers and the third person outside fled with Officer Schaefer in pursuit. In an exchange of gunfire, the masked robber was wounded, but all three in flight escaped. The two weapon-bearing robbers were later identified as Ervin Haas and William Owens.

█ The charges against defendant stem from his alleged participation as the lookout for the robbery. Evidence in support of defendant's involvement in the crime came from two of Bogart's customers who noted Ervin and Haas speaking with a third man outside of Bogart's immediately prior to entering the tavern in their aborted robbery attempt. Edward Coleman, a resident at Magdala Foundation, the halfway house where defendant and the two armed robbers also lived, testified for the State. He related that earlier in the evening of the Bogart's robbery effort he had been approached by the defendant, Haas, and Owens and had been asked to participate in the venture. Coleman declined the invitation, but another resident offered to supply guns to defendant, Haas and Owens if they would share their malgained lucre with him, and a bargain was struck. A gun was given to Haas, and defendant and Owens left with him by the back door fire escape. Upon his arrest by police on Coleman's information and after having been given the requisite *Miranda* warnings, defendant related to the police that he had accompanied Haas and Owens to Bogart's and remained outside during the course of the robbery attempt. However, he insisted that he had no gun, had not been involved in the shooting, nor had he hurt anyone. Defendant's version was that his statement had been coerced; the police said otherwise. The resolution of this conflict in evidence was a matter for jury resolution, *State v. Shegog,* 577 S.W.2d 185 (Mo.App.1979), and the conflict was resolved in favor of the State.

█ Defendant's first point of error asserts that Instruction No. 16 was misleading and was inconsistent with and contradicted by Instructions Nos. 15 and 17. The instructions read as follows:

### INSTRUCTION NO. 15

#### (MAI–CR 2.10)

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who, whether present or not, knowingly and intentionally aid or encourage another in committing it or attempting to commit it, and whatever one does in furtherance of the offense or an attempt to commit it is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was attempted or committed is alone not sufficient to make him responsible therefore, although his presence may be considered together with all of the evidence in determining his guilt or innocence.

### INSTRUCTION NO. 16

If two or more persons join in a purpose to commit a crime, each of them if present, is not only guilty of that crime if the other or others commit that particular crime, but he is also guilty of any other crime committed by the other or others in pursuance of the common purpose, or as a natural or probable consequence thereof.

### INSTRUCTION NO. 17

#### (MAI–CR 3.20)

One of the issues under all counts is whether the defendant was present at the time and place the offense is alleged to have been committed. On that issue you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place the offense is alleged to have been committed.

2. If the evidence in this case leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed, then you must find the defendant not guilty under all counts.

Defendant submits that the evidence adduced at trial, when viewed in the light most favorable to the verdict, could only support the conclusion that, at most, he attended a planning session for the robbery. He argues that Instruction 16, through the operative language "join in a purpose" and "present," permitted the jury to find him responsible for the subsequent offenses committed by Haas and Owens solely on the basis of his presence at that planning session. Such a result is inconsistent with the strictures of Instruction 15, which he interprets as requiring an active participation in the robbery, and Instruction 17, which he interprets as requiring presence inside the tavern. Despite defendant's construction of the evidence, we believe that the testimony of the arresting officers concerning the defendant's admission that he stood outside of Bogart's Tavern during the attempted robbery provided a sufficient basis to submit the issue of presence at the scene of the crime to the jury. The ultimate test of accuracy for an instruction is whether it precisely follows substantive law and whether it will be correctly understood by a jury composed of average lay people. *Arthur v. Royse*, 574 S.W.2d 22 (Mo.App.1978); *Kirkwood Medical Supply Co. v. Ann Patterson Enterprises, Inc.*, 511 S.W.2d 433 (Mo.App.1974). A fair reading of the three instructions leads us to the conclusion that they are neither " . . . confusing, misleading, inadequate nor prejudicially erroneous . . . ," *Woodford v. Illinois Central Gulf R. Co.*, 518 S.W.2d 712, 716 (Mo. App.1974), and that they do accurately reflect the substantive law. Instruction 16, tendered by the court, is a non-MAI instruction based on *State v. Minor*, 556 S.W.2d 35 (Mo. banc 1977), and *State v. Chernick*, 278 S.W.2d 741 (Mo.1955). In *Chernick*, more closely analogous to this case, the defendant was convicted of assault with intent to kill with malice aforethought as the result of his participation in a bank robbery. No evidence was presented to show that Chernick was inside the bank or ever participated in the actual robbery. It was the State's contention, however, that he aided and abetted the robbers by acting as the

getaway driver. Therefore, Chernick was convicted of assault, a crime committed as the natural or probable consequence of the bank robbery when a police officer confronted the escaping felons. Similarly, defendant Crews could be convicted of the assaults arising out of the attempted robbery at Bogart's if the jury found that: (1) defendant joined in the purpose to commit the robbery; (2) was present at the scene— not necessarily in the tavern; and (3) the assaults arose " . . . in pursuance of the common purpose, or as a natural or probable consequence thereof." *State v. Paxton*, 453 S.W.2d 923 (Mo.1970); *State v. Williams*, 548 S.W.2d 227 (Mo.App.1977). We find no conflict with this instruction and Instruction 15, patterned after MAI– CR 2.10.[1] MAI–CR 2.10 is the general accountability instruction designed to be used, as in this case, when there is evidence that the defendant

. . . was an active participant in the crime or its attempt, even if he was not the principal actor, or (b) that the defendant aided or encouraged other participants either before or during the crime or its attempt and was present or not . . .. Notes on Use, MAI–CR 2.10

This formulation plainly refers only to count I, attempted robbery, and count II, armed criminal action, but not to the additional crimes in pursuance or as the natural consequence of that goal: the assault charges. As stated in paragraph 6(b) of the Notes on Use for MAI–CR 2.10, the instruction was not intended to cover criminal responsibility of the defendant to crimes committed by joint participants not contemplated by the defendant. The defendant argues that the jury could have impermissibly reduced the requirement of Instruction 15 by Instruction 16 with regard to counts I and II. Emphasizing the phrase "knowing-

ly act together" from Instruction 15, defendant submits that he played no active role in the robbery and, therefore, could not have "knowingly *acted* together" with Haas and Owens. He concludes that only by applying the less stringent Instruction 16 language, "join in a purpose," could the jury have found him guilty. We disagree. To the contrary, we find the language of Instruction 15 far less restrictive than Instruction 16 since it requires neither presence nor active participation. Aid or encouragement in committing a crime suffices. Therefore, defendant could be convicted under the terms of Instruction 15 by affirmatively associating himself with the venture or by participating in the crime in some manner that indicated he wanted to bring about or make the offense succeed. *State v. Taylor*, 542 S.W.2d 91 (Mo.App. 1976). According to the State's theory, his actions as a lookout would meet these criteria. *See: State v. Haselhorst*, 476 S.W.2d 543 (Mo.1972); *State v. Gregory*, 406 S.W.2d 662 (Mo.1966); *State v. Edwards*, 536 S.W.2d 193 (Mo.App.1976); *State v. Jones*, 524 S.W.2d 186 (Mo.App.1975).

Instruction 17, the alibi defense, is patterned after MAI–CR 3.20 and must be given if requested by the defendant. We discern no conflict between Instructions 16 and 17; each requires defendant's presence at both the time and place of the offense in order to apply. Therefore, the jury could not have convicted the defendant on the assault charges by virtue of his presence at the planning session alone.[2]

As his second citation of error, defendant complains that the trial court erred by failing to instruct the jury on the issues of withdrawal or abandonment of criminal purpose. The defendant is entitled to any instruction which is supported by the evidence, *State v. Shivers*, 458 S.W.2d 312

1. This case was tried prior to January 1, 1979, effective date of the MAI–CR 2d series. Therefore, all MAI–CR reference numbers represent pre-1979 instruction patterns.

2. We believe that the second paragraph of Instruction 17 should have limited its application to the assault charges, counts III–V. As noted in Instruction 15, a defendant who aids and encourages others in the commission of a crime may be convicted of that offense whether present or not. However, since the error was beneficial to the defendant, it provides no basis for reversal. *State v. Choate*, 553 S.W.2d 493 (Mo.App.1977); *State v. Johnson*, 546 S.W.2d 725 (Mo.App.1977).

(Mo.1970); *State v. Thomas*, 526 S.W.2d 893 (Mo.App.1975), even if he does not request it. *State v. Hegwood*, 558 S.W.2d 378 (Mo.App.1977). Yet, we find no error here. Defendant presented no evidence to indicate that he desired to withdraw from the crime or abandon his aid and assistance. In fact, his sole defense was based on a theory of alibi. Defendant contends that the in-custody admissions which served to place him near the crime scene were sufficient to raise the issue of abandonment because there was no evidence that once there, he entered the tavern or actively participated in the robbery attempt. Yet, the converse instructions submitted by the defendant to counter the verdict directing instructions for the charges on which he was convicted each required the jury to find in his favor if they did not believe that he knowingly and intentionally aided or encouraged Haas and Owens. Further, Instruction 15 warns the jury that mere presence at the scene of the crime without more does not render an individual criminally responsible. Consequently, we do not believe that a jury composed of responsible persons could reach the conclusion that defendant was guilty if he abandoned or withdrew from the criminal purpose. *State v. Haynes*, 510 S.W.2d 423 (Mo.1974).

■ The defendant's next complaint is again based on his contention that the State presented no evidence of his active participation in the attempted robbery. He argues that he cannot be convicted of armed criminal action because there was no evidence that he possessed or used a deadly weapon or intended such use by Haas or Owens. However, witness Coleman testified that defendant was present when a Magdala Foundation inmate offered to supply guns in exchange for a share of the gain. Coleman also stated that defendant indicated his approval. A jury could have found that the defendant knew that guns were to be used during the robbery. His conviction on the armed criminal action count is consistent with the rationale of *State v. Chernick*, supra. He could have been convicted of any crime committed by persons with whom he joined to pursue a criminal purpose if he was present at the scene of the offense. The jury evidently believed that Crews was the man who stood outside of Bogart's Tavern and properly rendered him accountable for subsequent violations of the armed criminal action statute by his comrades.

■ Finally, defendant submits that the trial court erred when it denied his motion for judgment of acquittal at the close of all the evidence because the State failed to make a submissible case. On review, we must survey the evidence in the light most favorable to the State, consider all favorable inferences which may be drawn therefrom and reject evidence to the contrary. *State v. Green*, 575 S.W.2d 211 (Mo.App.1978); *Johnson v. State*, 574 S.W.2d 936 (Mo.App.1978). If there is substantial evidence to support the finding of the jury, the verdict will not be disturbed on appeal. *State v. Fowler*, 558 S.W.2d 366 (Mo.App.1977); *State v. Gamache*, 519 S.W.2d 34 (Mo.App.1975). After considering the principles cited in *State v. Chernick*, supra, we are convinced that a submissible case was made. We believe that the evidence was sufficient to justify the jury in finding that the defendant did aid, abet and encourage Owens and Haas, thereby rendering himself responsible for all offenses which arose naturally and probably out of their initial criminal purpose. On November 17, 1976, shortly after 10:00 p. m., defendant was seen in the company of the two men who entered Bogart's Tavern at 11:00 p. m., attempted to rob it and assaulted three patrons in the process. Edward Coleman, who saw defendant with the two men, stated that one of them, Ervin Haas, asked him to join them in their nefarious activity. Though Coleman declined, another man was willing to supply the trio with arms in return for a share of the robbery proceeds. Coleman stated that all three agreed to the offer. The three left together. Two witnesses saw the two gunmen and a third unidentified man talking together outside the tavern immediately before the incident. Officer Schaefer noticed a man standing outside of the tavern while the robbery was in progress. He also noted that the man

fled when Haas and Owens ran from the scene. Defendant later admitted that he walked to Bogart's with Haas and Owens that night but claimed that he only stood outside. Nevertheless, we believe that the evidence supports a jury conclusion that Crews acted as a lookout, thereby encouraging the commission of the crime. *State v. Edwards*, supra; *State v. Jones*, supra. While some of the evidence may be classified as circumstantial, the facts and circumstances are (a) consistent with each other, (b) consistent with the hypothesis of guilt, (c) inconsistent with innocence and (d) point clearly to guilt as to exclude all reasonable hypotheses of innocence. *State v. Odum*, 351 S.W.2d 10 (Mo.1961). *Accord: State v. Major*, 564 S.W.2d 79 (Mo.App.1978); *State v. Bennett*, 560 S.W.2d 310 (Mo.App.1977); *State v. Edwards*, supra. A case involving circumstantial evidence need not prove guilt conclusively or demonstrate the impossibility of innocence. *State v. Montgomery*, 571 S.W.2d 784 (Mo.App.1978); *State v. Morris*, 564 S.W.2d 303 (Mo.App.1978).

The judgment is affirmed.

REINHARD, P. J., and CRIST, J., concur.