STATE of Missouri,
Plaintiff-Respondent,

v.

Bill REED, Defendant-Appellant.

No. 13701.

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 1, 1985.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 13, 1985.

Application to Transfer Denied April 2, 1985.

John D. Ashcroft, Atty. Gen., Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Lawrence N. Koeln, Centerville, for defendant-appellant.

GREENE, Judge.

Defendant, Bill Reed, was charged by information with the class C felony of sec-

ond degree burglary in violation of § 569.-170-1, RSMo 1978. The substance of the charge was that Reed unlawfully entered a building owned by Gerald Massey for the purpose of committing the crime of stealing. After waiver of jury trial, Reed was tried by the court, found guilty, and sentenced to two years' imprisonment in the custody of the Missouri Department of Corrections.

On appeal, Reed raises only one issue, claiming that the evidence was insufficient to sustain the conviction. In our review, we view the evidence in the light most favorable to the state, disregarding all contrary evidence and inferences to be drawn therefrom. *State v. Anderson*, 671 S.W.2d 383, 384 (Mo.App.1984). Where, as here, the evidence of defendant's agency in connection with the crime charged is entirely circumstantial, the facts and circumstances upon which the state relies must be consistent with defendant's guilt and inconsistent with any reasonable theory of his innocence. *State v. Anderson*, supra, at 384. In viewing such facts and circumstances, we keep in mind that a conviction based on circumstantial evidence may rest on cumulative, interdependent facts, no one of which alone would create more than a suspicion of guilt. *State v. Jackson*, 519 S.W.2d 551, 557 (Mo.App.1975).

Viewed in the light of those legal principles set out above, the evidence introduced at trial was that Ewell Polk, a resident of Ellington, Missouri, had leased from Gerald Massey a cabin located on Trail 25 on the Current River in Shannon County. Among the furniture in the cabin was a large ivory-colored gas refrigerator, which was about seven feet high and four feet wide. Polk had been at the cabin on July 19, 1983. When he left, he closed, but did not lock, the front door.

In the early evening hours of July 21, Kenneth Bowles, an area resident, saw a light tan, or brown, older model Ford pickup truck coming off Macy Ridge Road onto Blue Springs Road. The intersection of these roads was two or three miles from the Massey cabin and intersected with a road that went to the cabin. In the back of the pickup truck was a large white or ivory-colored refrigerator. Bowles was suspicious, as he knew that several cabins in the area had been recently burglarized, and followed the truck.

The truck turned left onto Highway 106, traveling west about a quarter of a mile, then turned back north on a side road and stopped. When Bowles saw the door on the driver's side of the pickup start to open, he left the scene to go home and alert neighbors and law enforcement officers of a possible burglary. He drove back to Highway 106 and turned east toward his home. Within a short distance, he met Phil Moss, the Reynolds County assessor. Bowles stopped his vehicle in the eastbound lane of traffic, and Moss stopped his pickup in the west bound lane, thus blocking the road. While Bowles was telling Moss what he had just observed, the light brown pickup previously seen by Bowles came upon the scene from the west and stopped behind the Bowles truck. Reed was seated on the passenger side, and a friend of Reed's, George Lyon, was driving.

Upon being asked where they got the refrigerator in the back of their truck, Lyon replied that it was none of Bowles' and Moss' "damned business." Bowles and Moss said it was their business since several cabins in the area had been broken into in the past few months. Lyon then said he had found the refrigerator in a dump. There was no dump in the vicinity. When asked by Moss what they were doing in the area, Lyon said, "We're just out running around." Lyon then drove his pickup around the Bowles vehicle and left the scene.

Bowles went home and called law enforcement officers, as well as people who occupied cabins on the river, including Polk, and told them what he and Moss had seen. Polk came to the Bowles home and the two of them went to the cabin where they found that the front door had been taken off its hinges and laid aside. The refrigerator was gone. It was never recov-

ered. Reed and Lyon were neighbors, and lived approximately 25 miles from the scene of the burglary.

This evidence, and the reasonable inferences to be drawn from it, establishes the following conclusions.

1) The cabin was unlawfully entered for the purpose of stealing.

2) A refrigerator was stolen from the cabin.

3) When confronted in the area where the burglary occurred, Lyon and Reed, who were friends and neighbors and lived approximately 25 miles from the crime scene area, offered no reasonable explanation as to why they were in the remote secluded area as darkness was approaching.

4) When spotted by Bowles, the truck driven by Lyon took evasive action to avoid closer scrutiny by Bowles.

5) A refrigerator, matching the description of the one stolen from the cabin, was in the pickup driven by Lyon, and was the refrigerator stolen from the cabin.

6) The refrigerator, by reason of its size and weight, could not have been taken out of the cabin and placed in the pickup by one man.

7) Since there was no one other than Reed in the pickup driven by Lyon, Reed assisted Lyon in entering the cabin, stealing the refrigerator, and putting it in the truck.

8) Reed, as an aider and abettor, was guilty as charged. The evidence was sufficient to sustain the finding of guilty.

Judgment affirmed.

CROW, P.J., and TITUS and FLANIGAN, JJ., concur.