**STATE of Missouri, Plaintiff-Respondent,**

v.

**Gerald CONWAY, Defendant-Appellant.**

No. 52473.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 6, 1987.

Motion for Rehearing and/or Transfer Denied Nov. 6, 1987.

Application to Transfer Denied Dec. 15, 1987.

Dave Hemingway, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Gerald Conway, was charged with burglary in the first degree, Count I; stealing a firearm, Count II; and resisting arrest, Count III. The trial court accepted jury verdicts of guilty on Counts I and II and not guilty on Count III. Defendant was sentenced as a persistent offender to twenty-five years' imprisonment on Count I and a concurrent term of fifteen years' imprisonment on Count II. Defendant appeals, claiming seven points of trial court error. We affirm the conviction arising out of Count I and reverse and remand the conviction arising out of Count II.

Because defendant does not challenge the sufficiency of the evidence, we briefly review the evidence in the light most favorable to the verdict. On August 29, 1984, Mary Roemerman and her husband attended a concert. They returned home about 12:30 a.m. The Roemermans have two sons, Mike and Danny, who share a bedroom. At about 1:30 a.m., Mary went to her sons' bedroom to see whether Mike was home. As she entered the room she noticed that Danny's rifle case was on his bed, and that the bedroom door would not open completely. The bedroom light was on. Mary looked behind the door and saw a black man wearing blue jeans and no shirt. She described him as having "wild hair" and a beard and mustache. She stared at him for approximately one minute, then ran to wake her husband and Danny, who called the police. The man disappeared.

Officer Daniel Reeder testified that after the police were called he received a description of the burglar from another officer. Subsequently, he observed defendant driving in an erratic manner. Based on defendant's driving, the vicinity of defendant's location to the Roemerman home, and the burglar's description Reeder earlier had received, he pursued defendant. When defendant eventually stopped, Reeder observed him drop a rifle from the driver's window. After a brief struggle, Reeder arrested defendant. Within one hour after calling the police Ms. Roemerman was taken to the arrest site where she identified defendant as the man who had been in her sons' bedroom.

Defendant first claims the trial court erred in accepting the guilty verdict on Count II because the verdict resulted from judicial coercion of a juror.

After some deliberation, the jury indicated that it had reached a verdict. The foreman tendered the completed verdict forms finding defendant guilty of Count I, burglary in the first degree, and Count II, stealing a firearm, and not guilty of Count III, resisting arrest. Defendant then requested that the jury be polled as to the guilty verdicts. The following excerpts from that poll form the basis for defendant's claim of error:

BAILIFF ENRIGHT: Toni Montgomery, is that your verdict?

JUROR MONTGOMERY: On all three?

BAILIFF ENRIGHT: On the first two? On Count I and II.

JUROR MONTGOMERY: Half.

BAILIFF ENRIGHT: Martha Vonderheid—

THE COURT: Wait a minute. Is that your verdict as to—on the Burglary Count, Count I, is that your verdict?

JUROR MONTGOMERY: Yes.

THE COURT: And on the Stealing count, Count II, is that your verdict?

JUROR MONTGOMERY: I said not guilty. I don't understand. We all had to agree on the final—is that correct?

THE COURT: Yes ma'am.

JUROR MONTGOMERY: Okay. I agreed. On the first two counts. Yes.

THE COURT: Is that your verdict on the Stealing count, Count II, is that your verdict?

JUROR MONTGOMERY: No.

[PROSECUTOR]: Judge, may we approach the bench?

THE COURT: You may.

At that time, defendant's attorney requested a mistrial, but the trial judge did not rule on it. He said he would finish polling the jury, then decide whether to allow the jury to deliberate further or declare a mistrial. He also indicated that Juror Montgomery had a clear grasp of the question he had asked her.

> THE COURT: I'm going to finish polling the jury, and we'll reach the question about what I'm going to do as to Count II as to whether or not I'm going to let the jury deliberate further on Count II or declare a mistrial.

> \*    \*    \*    \*    \*    \*

> THE COURT: I think the record shows that she's clear on what I'm asking.

When polling was completed, the trial judge stated he would not accept the verdict as the verdict of the jury, then inexplicably chose to question Juror Montgomery once more in open court.

> [PROSECUTOR]: Judge, I'm simply asking that you try and clear it up with her. I mean, we can do it in chambers if you want so as to—

> THE COURT: No, I don't think so. That's going to ask this woman to deliberate out in open court, outside the, outside the presence of the others, and I'm not going to do that. I'm not going to accept this verdict as the verdict of the jury. I'm either going to declare a mistrial or direct that they deliberate further.

> \*    \*    \*    \*    \*    \*

> THE COURT: I'll give her one more time. (Bench conference ended, and the following was asked out loud within the presence and hearing of the jury:)

> THE COURT: Miss Montgomery, I'm not picking on you, but I want to clarify the record. Under Count I, the burglary count, is your verdict the verdict of guilty?

> JUROR MONTGOMERY: Yes.

> THE COURT: And what is—was your verdict of guilty or not guilty under Count II, the stealing count?

> JUROR MONTGOMERY: Also guilty.

> THE COURT: Also guilty? Let the record show the Court will accept the verdict of guilty of Count I on the record of the jury and Court will also accept on the record the verdict of the jury under Count II of guilty.

Resolution of the issue in this case involves a factorial analysis. Neither the state nor the defense disagrees with the underlying premise that a unanimous verdict, free from any taint, is required to convict a defendant. They disagree on the inferences to be drawn from the record. The State argues that the trial judge simply was clarifying a response from a confused juror. The defendant claims that the juror was coerced.

■ A coerced verdict does not represent a true unanimous concurrence of the jury. Questioning a juror in open court as to his decision, however, need not be inherently coercive. *State v. Hatch,* 724 S.W.2d 643, 645 (Mo.App.1987). If there truly is a confusion as to a juror's response, the trial court would be derelict in its duty if it did not attempt to clarify the juror's position. There is a clear distinction between questioning a juror to alleviate some element of confusion and attempting to coerce a unanimous verdict. *State v. Jackson,* 522 S.W. 2d 317, 321 (Mo.App.1975). Here we find the actions of the trial court were coercive in two respects.

■ The record shows that when the trial judge initially questioned Juror Montgomery, he received an unequivocal answer that she did not concur in the guilty verdict

on Count II. At that point, his options were those set forth in Rule 29.01. He could have either declared a mistrial or directed the jurors to deliberate further. We express no opinion on which of these alternatives would have been appropriate in this case. The trial judge initially indicated that he would exercise one of the choices provided by Rule 29.01. After further discussion with the attorneys, and faced with the frustration of having two days of trial time wasted by an errant juror, he decided to ask one more time. When he got the "right answer," the trial was concluded. The trial judge did not question the juror further to find out why she had previously given a different response.

We find that the questions were coercive. The trial court erred in accepting the verdict once Juror Montgomery clearly stated that she did not concur in the guilty verdict on Count II.

The trial judge's decision to question Juror Montgomery after the completion of the polling of the jurors exacerbated the error. It served to place the juror in the position of publicly disagreeing with eleven co-jurors who had already announced they were in favor of a guilty verdict. While there are times when the court is obligated to clarify an ambiguity raised during a jury poll, the resolution of that ambiguity should not be postponed until the remaining jurors have given their responses. A trial judge should promptly question a juror to clarify the verdict prior to completing the poll. Otherwise a juror could feel pressured by the court or his co-jurors to reach a unanimous verdict he feels is incorrect. *See State v. Harris*, 659 S.W.2d 565 (Mo.App.1983); *State v. Hatch*, 724 S.W.2d 643 (Mo.App.1986).

■ Whether Juror Montgomery was in fact coerced or whether it was simply a situation of a problem juror cannot be stated with certainty. What is clear is that the integrity of the verdict was tainted and should not have been accepted. The stealing conviction is reversed and that count is remanded for a new trial.

Defendant next claims the trial court erred in overruling his motion to suppress and his objections to Mary Roemerman's pre-trial and in-court identifications of defendant. Ms. Roemerman identified the defendant at the show-up slightly more than one hour after having discovered the man in her sons' bedroom.

■ Although a show-up presents a suspect in a suggestive light, that does not automatically transform a reliable identification into an unreliable one. The factors to consider in determining the reliability of a witness's identification are the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated at the confrontation, and the amount of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). We find on the facts presented that the pre-trial identification of defendant by the witness meets the test for reliability. The fact that the prosecutor showed a photograph of defendant to the witness in June, 1986, roughly three months prior to trial did not corrupt the reliability of the in-court identification. It is proper for a witness to view a photograph prior to trial for the purpose of refreshing her memory, so long as the witness makes a positive identification at trial, under oath. *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc 1983). Defendant's second point is denied.

■ Defendant next claims the trial court should have dismissed the case due to the State's failure to preserve police 911 tapes. Defendant speculates that these tapes might have impeached Officer Reeder's testimony that his arrest of defendant was based on a description he had received. The Fourteenth Amendment does not require the State to preserve potentially exculpatory evidence for defendant. *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413 (1984). The constitutional duty to preserve evidence is restricted only to evidence that "might be expected to play a significant

role in the suspect's defense ... [It] must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488–489, 104 S.Ct. at 2534. Here, defendant had other means available, the most significant of which was cross-examination of Officer Reeder. Defendant's point is denied.

Defendant next claims the trial court erred in admitting the stolen rifle into evidence over objection. He claims there was no chain of custody established to show that the rifle that was dropped from defendant's car belonged to Danny Roemerman. Reeder did not seize the rifle nor did he have firsthand knowledge of a chain of custody.

 On direct examination, Reeder was asked to identify a rifle. He said it "appeared" to be the same rifle defendant dropped out of the car window. He based his identification on the size, shape, and a similar scope. The identification of an exhibit need not be wholly unqualified in order to make it admissible. *State v. Kelly,* 539 S.W.2d 106, 110 (Mo. banc 1976); *State v. Hoard,* 715 S.W.2d 321, 325 (Mo.App. 1986). In *State v. Ridinger,* 589 S.W.2d 110 (Mo.App.1979), two witnesses, admitted thieves of a citizens band radio (C.B.), could not positively identify a C.B. the State offered into evidence. They each testified the C.B. "looked like the one" they had stolen. That court recognized that "[t]estimony concerning an exhibit that it 'looks like,' 'looks familiar,' 'very much like,' 'very similar,' etc., to an involved object, has been held sufficient to warrant its admission into evidence." *Id.* at 113. The weight given to identity remains a jury question. *Id.* For these reasons, we hold that the trial court did not abuse its discretion in admitting the rifle into evidence.

Defendant finally claims that he was denied his right to a speedy trial; that the prosecutor should have disqualified himself on grounds of bias against defendant; and that in-court references to the rifle and to Mary's pre-trial and in-court identifications were fruits of an illegal arrest. An extended opinion on these three points would have no jurisprudential value. Points V, VI, and VII are denied pursuant to Rule 30.25(b).

Count I is affirmed, and Count II is reversed and remanded.

SIMON, P.J., and GRIMM, J., concur.