STATE of Missouri, Respondent,

v.

Ronnie E. FREDERICK, Appellant.

No. WD 40602.

Missouri Court of Appeals, Western District.

Jan. 23, 1990.

Carol Coe, Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, C.J., and FENNER and ULRICH, JJ.

NUGENT, Chief Judge.

Defendant Ronnie E. Frederick appeals his conviction by a jury of second degree murder and armed criminal action and from the sentence of two consecutive terms of life in prison based upon his certification before trial as a class X and a prior and persistent offender.

Mr. Frederick first contends that the trial court erred in accepting the verdict because one juror answered equivocally during a poll of the jury. He argues further that by certifying him as a class X offender under § 558.019,[1] the court erred in applying an ex post facto law because his prior convictions occurred before enactment of that statute.

Although the defendant does not question the sufficiency of the evidence, we recount the important facts: On a late evening, defendant Frederick got into a fist fight at Swope Park. The victim, Earl Randolph, joined the crowd that gathered to watch. During the fight, he and the defendant's cousin, also a spectator, argued briefly. Sometime during their argument the fist fight ended, and the defendant departed. Soon, however, he returned with a handgun, and began berating Mr. Randolph for his part in the argument. Brandishing his gun he advanced on Mr. Randolph, who steadily backed away. The defendant told Mr. Randolph that he did not mind fighting him and asked him if he had a gun. Mr. Randolph responded that he did not want to fight. Meanwhile, some members of the crowd tried to get the defendant to put away his gun. Mr. Ran-

---

**1.** All sectional citations refer to the Revised Statutes of Missouri, 1986. Section 558.019.4(3) provides that a *"'class X offender'* is one who previously has pleaded guilty to or has been found guilty of three felonies committed at different times."

Section 558.019.2(3) requires a class X offender to serve at least eighty per cent of his sentence.

dolph backed into a tree, partially spread his arms and told Mr. Frederick to shoot if he really planned to shoot, the defendant raised the gun and fired, fatally wounding Mr. Randolph.

At trial, before the voir dire, the state presented evidence that in 1984 Mr. Frederick pled guilty to a charge of stealing over $150, a class C felony, § 570.030.3(1), and at another time that year, pled guilty to a charge of second degree burglary and stealing over $150, also a class C felony. § 569.170.2. The state also adduced evidence of the defendant's 1986 guilty plea to the charge of carrying a concealed weapon, a class D felony. § 571.030.4. The court made formal findings that defendant Frederick had committed and pled guilty to three separate felonies, and classified the defendant as a prior and persistent offender and as a class X offender under § 558.019 and thus liable to imposition of the more stringent sentences mandated by that section for repeat offenders.

After the jury convicted the defendant, defense counsel requested a poll of the jurors. One juror, Frankie Essex, asked whether the verdicts represented her verdicts first, said, "Yes." Asked again, she responded, "Sort of." Then, at the urging of defense counsel, the court asked her a third time whether she agreed with the verdicts. Again she said, "Yes." The court denied defense counsel's request that the court examine Ms. Essex in chambers and denied the defendant's motion for a new trial.

■ On appeal, Mr. Frederick first contends that the trial court erred in accepting the jury verdict because Ms. Essex equivocated in her answer that she agreed with the verdicts as announced. He contends that by continuing to question her in open court in front of her fellow jurors the judge subjected her to undue pressure that may have tainted her final response.

Rule 29.01(d) of the Missouri Rules of Criminal Procedure provides as follows:

*Poll of Jury.* When a jury verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.

Mr. Frederick maintains that his case mirrors *State v. Conway,* 740 S.W.2d 320 (Mo.App.1987). There the court reversed a conviction entered after the trial judge continued questioning a juror who at first unequivocally denied that she agreed with the jury's verdict but a short time later said that she did agree. On appeal, the court held that the trial judge erred in continuing to question the juror until "he got the 'right answer.'" *Id.* at 324. The court further held that, when an ambiguity concerning a juror's verdict appears, "the resolution of that ambiguity should not be postponed until the remaining jurors have given their responses." *Id.*

The facts in *Conway* distinguish it from the instant case. There, the juror in question three times said that she did not agree with the other jurors' verdict of guilty on one of two counts. After a bench conference and polling the jury, the trial court asked her again if she disagreed with the jury's verdict. At that time, the juror responded that she did agree with the jury's verdict on both counts.

By way of contrast, here the following exchange occurred between Juror Essex and the trial judge during the polling of the jurors:

THE COURT: Frankie Essex, are those your verdicts, ma'am?

JUROR FRANKIE ESSEX: Yes.

THE COURT: I'm asking you, ma'am, are those your verdicts that were just read?

JUROR FRANKIE ESSEX: Sort of.

THE COURT: Can you be more specific, please? Are those your verdicts, ma'am, or not? Either they are or they are not.

JUROR FRANKIE ESSEX: Yes.

After completing the poll of the jury, the judge held a bench conference with counsel and then asked Ms. Essex one more time whether she agreed with the jury's verdict. She answered that she did, and he then accepted the jury's verdict.

Unlike the juror in *Conway*, Ms. Essex did not say that she disagreed with the verdict of the other jurors. Instead, she hesitated, answered with some ambiguity, and finally clearly stated her agreement with the jury's verdict.

The trial judge, querying Ms. Essex about the delay between his first question and her response, asked her a second time whether she agreed with the verdict. Her response, "Sort of," proving unclear, he asked a third time, and received a clear "Yes." After the bench conference, he sought to remove any doubt about Ms. Essex's verdict and asked her a fourth and final time. Unlike the judge in *Conway*, the judge here did not fish for one special answer. Rather, he sought to clarify what Ms. Essex meant by her initially ambiguous answers.

■ The actions of the trial judge in this case comport with the standards governing the conduct of a trial judge who must question a juror regarding her verdict. If uncertainty of a juror appears to grow out of confusion rather than dissent, the trial judge may question the juror to obtain clarity. *State v. Jackson*, 522 S.W.2d 317, 322 (Mo.App.1975). *See also State v. Harris*, 659 S.W.2d 565 (Mo.App.1983). In *State v. Hatch*, 724 S.W.2d 643 (Mo.App. 1986), for example, during a poll of the jury, one member twice stated that she did not agree with the verdict of the jury, but, upon further questioning by the trial judge, explained that initially she had disagreed with the verdict but after further deliberation she had changed her mind, and, by the time the jury had reached a final verdict and had delivered it to the court, she agreed with the decision of her fellow jurors. In holding that the trial court had not erred, we held that "the trial judge may make inquiry in a genteel, polite, non-leading and non-coercive manner that will clarify a juror's response." *Id.* at 645. The trial judge in the case at bar did exactly that.

■ Questioning about a juror's verdict by a trial judge in open court "need not be 'inherently' coercive." *Jackson*, 522 S.W.2d at 321. The reviewing court must distinguish between a court's effort to eliminate confusion and its attempt to compel an answer. *Id.* The trial court errs if it continues to question a juror only after that juror's answers clearly evince disagreement with the verdict. *Id.* at 322. *See also State v. Conway, supra.* Here, Ms. Essex's second answer indicated possible confusion, not dissent, and the court's questions of her showed an intent to clarify, not to coerce. Thus, the trial judge did not err in accepting the jury's verdict.

■ In the second of his two points, Mr. Frederick argues that the trial court erred in certifying him as a class X offender, under § 558.019. He argues that because the felonies upon which the court based its certification occurred before the enactment of that statute on January 1, 1987, the court applied an ex post facto law.

In *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court established a succinct test for an ex post facto law. Writing for the Court, Justice Marshall held that such a law "must be retrospective, that is, it must refer to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964 (footnote omitted). Missouri's courts similarly define ex post facto laws. *State v. Lawhorn*, 762 S.W.2d 820, 824 (Mo.1988) (en banc); *State v. Acton*, 665 S.W.2d 618 (Mo.1984) (en banc).

The defendant argues that the trial judge applied § 558.019 retrospectively and that the statute disadvantaged him because it drastically reduced the opportunity to parole available to him under the law in effect before the adoption of § 558.019. In support of his argument, he cites several cases, including *State v. McCoy*, 748 S.W.2d 809 (Mo.App.1988), *State v. Hillis*, 748 S.W.2d 694 (Mo.App.1988), and *State v. Pollard*, 746 S.W.2d 632 (Mo.App.1988). In those cases, and more recently in *Lawhorn* and *State v. Wiley*, 766 S.W.2d 700 (Mo. App.1989), Missouri appellate courts have indeed reversed the sentences imposed upon defendants by trial courts employing

the enhanced sentencing rules of § 558.019.[2]

Those cases, however, differ from the instant case in decisive respects. In each of them the court employed § 558.019 to enhance the sentence of a defendant convicted of a crime committed before the enactment of that section. Here, although all of the felonies upon which the trial judge based his classification of the defendant as a class X offender occurred before that section came into effect, the crime for which the jury convicted Mr. Frederick, and the sentences he now appeals, occurred in September, 1987—over nine months after the enactment of § 558.019.

Sentence enhancement statutes "do not punish a defendant for his prior convictions; rather, they punish him as a repeat offender for his latest offense on the basis of a demonstrated propensity for misconduct." *Acton*, 665 S.W.2d at 619. Moreover, in *Weaver*, while addressing another issue, the Court said, "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." 450 U.S. at 30, 101 S.Ct. at 1965.

Here, the trial judge sentenced defendant Frederick not for the crimes committed in 1984 and 1986, but for the crime he committed in 1987, and enhanced that sentence on the basis of the earlier crimes. Thus, he did not apply an ex post facto law, and did not commit reversible error. The defendant has failed to establish the first prong of the *Weaver* test, therefore, we need not determine whether he established the second prong.

For the foregoing reasons, we affirm the judgment.

All concur.

---

**2.** Section 217.690, amended in 1986, would have allowed Mr. Frederick to leave prison far earlier than he can under the enhanced sentences mandated by § 558.016.