**STATE of Missouri, Respondent,**

v.

**Andre L. ALLEN, Appellant.**

**Andre L. ALLEN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 42384, 44724.**

Missouri Court of Appeals,
Western District.

March 10, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1992.

Application to Transfer Denied
June 2, 1992.

David S. Durbin, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Andre Allen appeals his first degree murder and armed criminal action convictions and his sentences for those convictions. While his appeal was pending he also filed a motion pursuant to Rule 29.15 for post-conviction relief, and he appeals the motion court's denial of that motion. We consider both appeals and affirm.

*Facts*

Allen was convicted of killing Kenneth Farmer during a shooting on May 11, 1988, in Kansas City. Shortly before the shooting, Farmer ran out of an apartment building at 906 East 30th Street carrying a handgun. Moments later, Allen peered out

from the apartment building's entrance; he ran outside and fired a spray of bullets at Farmer from a large weapon described as an "Uzi." Farmer retreated, ducking behind his car. Allen jumped on the hood of Farmer's car as he continued firing at Farmer. Six bullets hit Farmer, and an autopsy indicated that he died of internal bleeding.

Allen raises eight points of error concerning his trial. He raises one point of error concerning the denial of his motion for post-conviction relief. We consider each of the points in the order argued in Allen's brief.

### Point I

■ He complains in his first point that the trial court erred in refusing to let him ask the jury panel during voir dire:

> If we chose not to present evidence, but rather to rely upon the presumption of innocence and a perception that perhaps the state had not met their burden of proof, is there anyone here who could not return a verdict of not guilty if the defendant presented no evidence?

The court discussed the issue with counsel at the bench:

> THE COURT [to Allen's counsel Charles Rodgers]: Let me just ask you, first of all, do you plan to put on any evidence?
>
> MR. [RODGERS]: Yes.
>
>    *    *    *    *    *    *
>
> THE COURT: [T]hen why are you asking something that isn't going to happen?
>
> MR. [RODGERS]: I'm exploring, once again. I think the fundamental concept in a criminal trial is the presumption of innocence and the related burden of proof, and I believe that jurors sometimes have difficulty understanding those concepts and their full ramifications, and I think I'm attempting to explore some of the ramifications of those concepts to see if the venire people are actually understanding and committing themselves to follow those concepts—to apply those concepts, I should say.

The trial court concluded that Allen's counsel was attempting "to lecture" the jury concerning the law and sustained the state's objection.

Whether to permit the question was within the trial court's sound discretion. *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). We should interfere with the trial court's decision only when the record establishes "a manifest abuse of discretion and a real probability of injury to the complaining party." *State v. Tarkington*, 794 S.W.2d 297, 299 (Mo.App. 1990). Allen has not persuaded us that the trial court abused its discretion.

We concur with the trial court's conclusion that the question posed by Allen's counsel was an attempt to instruct the prospective jurors what law would be applied in the case. Such questions are improper. *State v. White*, 722 S.W.2d 92 (Mo.App. 1986). Allen's point of error is without merit.

### Point II

■ In his second point, Allen asserts that the trial court committed reversible error when it refused to let him ask a police officer whether the steering column of Farmer's car had been broken or altered. The trial court sustained the state's objection that the evidence was irrelevant.

Allen's counsel explained to the court that he was trying to rebut an implication of the state's evidence that Farmer was trying to drive his car away from the scene when Allen shot him. The state established that Farmer's car was in reverse gear and that its back-up lights were on when the shooting occurred. Counsel stated:

> The evidence I adduce will show that the steering column had been broken, that it had been put back together with some kind of homemade brace, from which I believe the jury can infer that could affect the way the back-up lights would perform and the way the gearshift indicator would appear.

The trial court sustained the state's objection because it did not believe that the mechanics of automobile back-up lights was within the realm of common knowledge.

The trial court has broad discretion to determine the relevancy of evidence. "[A]bsent a clear showing of abuse of ... discretion, the appellate court should not interfere with the trial court's ruling." *State v. Brown,* 718 S.W.2d 493, 494 (Mo. banc 1986). We do not discern an abuse of discretion in this case.

■ Evidence is relevant only if it tends to prove or disprove a fact in issue or it cooroborates other material evidence. *State v. Burns,* 795 S.W.2d 527 (Mo.App. 1990). Although Allen intended his proffered evidence to rebut state evidence, it was an issue which had little significance. Although the state may have set out to establish that Farmer was trying to flee the scene in his car, its evidence established, instead, that Farmer was shot as he ducked behind his car. Hence, the issue was only a collateral matter.

### Point III

Allen's third point is that the trial court erroneously refused to let him establish that when a police detective took a statement from Leroy Henderson, a witness to the shooting, he informed Henderson of his *Miranda* rights. Allen also complained that the court did not permit him to establish that the detective had evidence implicating Henderson in the shooting. Allen's point totally lacks merit. Although the trial court initially sustained the state's objections to the evidence, the court changed its ruling and permitted Allen's counsel to elicit the information during cross examination of the detective.

### Point IV

■ Allen assigns error in his fourth point to the trial court's sustaining the state's objection to a photograph offered by Allen. The photo depicted his attorney's pointing to a bullet hole in a wall near the apartment building's entrance. An investigator discovered the hole, with a bullet lodged in it, about three months after the shooting. Allen offered the photo to corroborate a witness' testimony that Farmer had fired several shots at Allen and that one of them had lodged in the wall near the witness' head.

The trial court did accept from Allen five other photographs depicting the bullet hole, but neither the attorney nor anyone else was in the pictures. Several of the other pictures included a ruler showing the distance between the bullet hole and the ground.

The trial court has broad discretion to determine the admissibility of demonstrative evidence. We should deem the court's ruling to be erroneous only if the appellant demonstrates an abuse of that discretion. *State v. Weekley,* 621 S.W.2d 256 (Mo. 1981). We discern no abuse of discretion here. The picture was cumulative to the five other photographs already accepted by the court.

### Point V

■ In his fifth point, Allen complains that the trial court permitted the state to violate § 546.260, RSMo 1986, by asking about two areas which were beyond the scope of his testimony on direct examination. The state asked Allen whether he had read all of the police reports of the shooting and what he did after shooting Farmer.

■ Section 546.260 restricts cross examination of a criminal defendant "to any matter referred to in [the defendant's] examination in chief[.]" The courts have construed this statute to permit cross examination concerning "all matters within the fair purview of the direct examination." *State v. Pittman,* 731 S.W.2d 43, 48 (Mo.App. 1987). The state may inquire into any matter to which a defendant referred in a general way in his testimony on direct examination, *State v. Murphy,* 592 S.W.2d 727 (Mo. banc 1979), especially if the question's purpose is to challenge his credibility and trustworthiness. *State v. Hawkins,* 690 S.W.2d 198 (Mo.App.1985).

Both areas of the state's inquiry were within these parameters. The state's question concerning Allen's reading the police reports tested whether Allen had tailored his testimony to fit the facts in the police reports and, therefore, was intended to test Allen's credibility, trustworthiness, memory, and the accuracy of his testimony. The question concerning his whereabouts after the shooting—whether he remained in his girlfriend's apartment for more than four hours while police investigated the shooting outside—challenged Allen's contention that he shot in self defense. The jury could have reasonably inferred that Allen was trying to avoid police questioning and that this belied his contention of self defense.

### Point VI

■ Allen's sixth point is that the trial court erred in permitting the state to argue to the jury that Allen "knew what he was getting into when he walked out in the street, and he had nothing to fear because he had a nine-millimeter, fully automatic weapon[.]" The court overruled Allen's objection that the state's description of the weapon as "automatic" was beyond the evidence. Allen complains that the description inflamed the jury against him.

The state had offered evidence that Allen's weapon was an Uzi and that these guns can be automatic or semi-automatic. An automatic weapon continues shooting as long as the trigger remains pulled. A semi-automatic gun fires only once per trigger pull, but it automatically ejects the bullet cartridge. The state established that Allen sprayed the area with numerous bullets. If his weapon had been only semi-automatic, he would have had to pull the trigger numerous times—far more damaging to him than the prosecutor's suggestion that the weapon was automatic. Hence, we conclude that even if the trial court erred, Allen suffered no prejudice.

■ We conclude, however, that the trial did not err. It possessed broad discretion in controlling closing argument. *State v. Clifford*, 815 S.W.2d 3 (Mo.App.1991). A trial court is to accord counsel for both sides wide latitude in making reasonable inferences from the evidence as they argue. *State v. Jacobs*, 813 S.W.2d 318 (Mo. App.1991). We conclude that the state's argument was a reasonable inference from the evidence and that Allen's point is without merit.

### Point VII

■ Allen's seventh point complains that the trial court erred in refusing to let him suggest to the jury that it should draw an adverse inference from the state's failure to call Farmer's friends as witnesses. The court sustained the state's objection to Allen's argument, "Where are Farmer's friends, the guys [that one of the state's eye witnesses] said drove up there ...?" The state's attorney told the judge that the state had been "searching for those guys. To imply that the State didn't produce those witnesses when they were available is not true. We haven't been able to find them."

The court's ruling was correct. A court should not permit counsel to argue to the jury that it should give an adverse inference to one side's failure to call a witness if the missing witness is equally available to both parties or is unavailable to either party. *State v. Baker*, 741 S.W.2d 63 (Mo. App.1987). Allen identified the witnesses; none of the state's witnesses could identify them. He had ability superior to the state's to identify and to call the missing witnesses. Allen's point is without merit.

### Point VIII

■ In his eighth point, Allen contends that the trial court erred in accepting the jury's verdict because one of the jurors, James Brown, expressed reservations about the verdict. The judge polled the jury. When the judge's poll came to Juror Brown, this exchange occurred:

THE COURT: James Brown, is this your verdict?

JUROR BROWN: With reservations.

THE COURT: I beg your pardon?

JUROR BROWN: With reservations.

THE COURT: Is this your verdict?

JUROR BROWN: Yes, it is.

In an affidavit attached to Allen's motion for a new trial, Juror Brown stated:

I said my verdict was "with reservations" because I thought it was self-defense. I put myself in his place and I think he felt like he had to do what he did. I thought it was unfair. I felt that if I could have convinced even one other person, I would have continued to argue with them. I think the defendant felt he acted in self-defense.

If the judge had asked me what my reservations were, I would have told the judge exactly what I've told you. If I hadn't thought I would risk making the judge angry, I would have told him, anyway. I didn't know what the rules, on contempt of court, were.

Juror Brown's initial response demonstrated agreement with the verdict. Although he responded that his agreement was with reservations, when the judge sought clarification, he agreed unequivocally. In *State v. Frederick*, 783 S.W.2d 469 (Mo.App.1990), this court considered a similar situation. When asked by the court in that case, "[A]re those your verdicts ...," the juror responded, "Sort of." When the court asked her to be more specific and whether the verdicts were hers, she answered, "Yes." The *Frederick* court noted that the juror "did not say that she disagreed with the verdict of the other jurors. Instead, she hesitated, answered with some ambiguity, and finally clearly stated her agreement with the jury's verdict." *Id.* at 472. We also conclude that Juror Brown's final, unhesitating and unequivocal response removed any doubts about his agreement with the jury's verdict.

We do not consider Juror Brown's affidavit. A juror may not impeach his verdict. *State v. Stewart*, 815 S.W.2d 9 (Mo.App.1991). *State v. Scrivner*, 676 S.W.2d 12 (Mo.App.1984).

### Rule 29.15

Finally, Allen appeals denial of his Rule 29.15 motion for post-conviction remedies. Allen contended in his motion that he had been denied effective assistance of counsel because his attorney did not locate and interview Steven Shelby and did not call April Lesears as a witness. He argued that both could have testified that Shelby removed a gun from Farmer's hand after the shooting.

To establish ineffective assistance of counsel, Allen must show that his attorney did not exercise the customary skill and diligence a reasonably competent attorney would have exercised and that this prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Allen must overcome a presumption that his attorney was competent and that the deficiencies complained of were sound trial strategy. *Id.; State v. Stepter*, 794 S.W.2d 649 (Mo. banc 1990).

Concerning Shelby, Allen's attorney testified that he had searched "more than once" for Shelby but had been unable to find him. We will not deem an attorney to have been ineffective for failing to call a witness for whom the attorney has searched diligently and cannot find. *State v. Meadows*, 785 S.W.2d 635 (Mo.App.1990). We find no error here.

As for Lesears, Allen's attorney testified that he decided against calling her for strategic reasons. He feared that she might blurt out testimony damaging to Allen. This was a proper tactical decision and does not constitute ineffective assistance of counsel. *Rodden v. State*, 795 S.W.2d 393 (Mo. banc 1990).

Even if both had appeared at trial and testified that Shelby removed a gun from Farmer's hand after the shooting, it would not have affected the outcome of Allen's trial. The jury heard evidence that Farmer was armed. Shelby's and Lesears' evidence would have been cumulative. Failure to present cumulative evidence does not constitute ineffective assistance of counsel. *State v. Merchant*, 791 S.W.2d 840 (Mo.App.1990).

### Conclusion

We conclude, therefore, that Allen has failed to establish cause to reverse his con-

**530**

victions and sentences. We affirm. We further conclude that he has failed to establish that the motion court erroneously overruled his Rule 29.15 motion to set aside his convictions and affirm.

All concur.