**STATE of Missouri, Respondent,**

v.

**Michael J. SANDERS, Appellant.**

**No. 37420.**

Missouri Court of Appeals,
St. Louis District,
Division One.

April 26, 1977.

Motion for Rehearing or Transfer
Denied June 10, 1977.

Application to Transfer Denied
July 11, 1977.

T. Scott Richardson Jr., St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

CLEMENS, Presiding Judge.

A jury found defendant guilty of felonious assault and the trial court sentenced

him to five years' imprisonment. On appeal defendant raises a single point—that the trial court erred in giving the "hammer instruction" (MAI–CR 1.10) after it had learned the jurors were deadlocked at nine to three *for conviction.* The relevant proceedings:

After deliberating two hours the jury foreman sent the judge a note saying, "The Jury can't agree on a verdict. There are 9 for guilty and 3 for not guilty." Defense counsel moved for a mistrial. The jury was called into open court and answering the court's question the foreman gave his "considered opinion" a verdict could not be reached and that there was no need for further deliberation. The court invited individual jurors to express a contrary view but none did. Defense counsel again moved for a mistrial. He then objected to the court having given the hammer instruction on the ground the court knew just how the jurors stood and that the instruction would coerce the three jurors holding out for acquittal. Over this precise objection the trial court gave MAI–CR 1.10. The jury retired and ten minutes later returned a unanimous guilty verdict. Judgment, sentence and appeal followed apace.

The novel issue here is the propriety of the hammer instruction when the jurors had told the court just how they were divided in their votes for conviction and acquittal.

A kindred but distinguishable issue arises when the court asks a deliberating jury about the status of their deliberations. The leading case is *State v. Baker,* 293 S.W.2d 900[4, 5] (Mo.1956).[1] There, the trial court asked the jurors "how you stand numerically *but not how you stand,"* and the jurors answered "ten to two." In upholding the hammer instruction the court ruled: (Our emphasis).

"We have no doubt that it is common practice in this State, when the jury has deliberated for a considerable time, for the Judge to inquire how they stand numerically, *without indicating what party or result they favor,* for the purpose of ascertaining whether there is a reasonable probability of an agreement. Authorities differ as to the propriety of such an inquiry but we think the real question is whether there was any coercion of the jury in connection with it. See Annotation on Coercion, 85 A.L.R. 1420, 1450; 53 Am.Jur. 673, Secs. 954–955; 23 C.J.S., Criminal Law, § 1380, p. 1058. Such an inquiry has been barred in the federal courts by the decision of the United States Supreme Court in Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, which held 'that the inquiry itself should be regarded as ground for reversal', saying that 'in general its tendency is coercive.' However, our view is that such an inquiry is not coercive per se but that it *must be determined from the record of what is said and done at the time* whether or not there is any indication of coercion."

■ Basic principles of jury trials require jurors to perform their role free from extraneous factors. In the eyes of many jurors the trial judge can do no wrong; his word is law and jurors are sensitive to what he says and does. To this end, in *State v. Taylor,* 336 S.W.2d 495[6, 7] (Mo.1960), the court warned: "The practice of exchanging communications with a [deliberating] jury by the trial court is not commended."

■ A host of cases concerns hammer instructions. (27 A Mo.Dig., Trial, ⊕⊐314, Urging or Coercing Agreement). None concerns the unusual factor here, i. e., giving the instruction when the judge knows "what party or result they favor" and the jurors know he knows. By MAI–CR 1.10 the court tells the jury it is desirable for them to bring in a unanimous verdict and that they should endeavor to reach such a verdict. Given to deliberating jurors who have not indicated which party they favor, the instruction is persuasive but not necessarily coercive. But here three jurors were

---

1. Referred to as the "Missouri Rule" in *Anderson v. Bell,* 303 S.W.2d 93[9–12] (Mo.1957); *State v. Smith,* 431 S.W.2d 74[31, 32] (Mo. 1968), and *State v. Morris,* 476 S.W.2d 485[4] (Mo.1971).

for acquittal and each knew the judge was aware of their minority position. *To them* the judge's expressed desire for a unanimous verdict could mean but one thing—that he felt the three jurors should reconsider their votes. We hold that under this particular circumstance the hammer instruction deprived those three jurors of the independence of thought to which all jurors—and the litigants—were entitled. We hold that giving MAI–CR 1.10 under the circumstances was error. We now consider its materiality.

In *Anderson v. Bell*, 303 S.W.2d 93 [8–10] (Mo.1957) the court held that the hammer instruction "should be given only on those infrequent occasions when it is reasonably certain that no coercion will be thereby exercised" and giving it may, under the circumstances of a given case, indicate that a verdict was the result of coercion." The court added that it must determine whether coercion in fact occurred.

Having held that giving the hammer instruction was error, we look to its apparent coercive effect. This case was not uncomplicated; in two days of testimony the jurors had heard thirteen witnesses for the state and defendant. After deliberating two hours the jurors announced they stood nine to three for conviction and unanimously declared they were deadlocked. But after hearing the hammer instruction, the three jurors yielded to the nine—this in only ten minutes. We hold that the hammer instruction was in fact coercive and vitiated the guilty verdict.

Reversed and remanded.

DOWD, J., dissents.

SMITH, J. concurs.

1. If it is assumed, as done in the majority opinion, that coercion is indicated by the fact that the jury stood 9 to 3 in favor of conviction, it is equally logical to assume coercion occurred if the jury stands 8 to 4 or 7 to 5 for conviction. I do not believe there is anything magical about the fact that the jury was 9 to 3 in favor of conviction so as to preclude the giving of this instruction.

DOWD, Judge, dissenting.

I must respectfully dissent. Instructions similar to the instruction which the court today holds erroneous have "routinely been held not to be coercive or improper," and the instruction given by the trial court is an expressly approved "pattern" instruction under MAI–CR. *State v. Letourneau*, 515 S.W.2d 838, 844[9] (Mo.App.1974); MAI–CR 1.10.

The majority opinion is based upon the fact that the trial court knew the jury stood 9 to 3 in favor of conviction[1] when the court gave MAI–CR 1.10.[2] However, the information as to the status of the jury's deliberations was unsolicited by the trial court. The jury foreman volunteered the information in a note to the trial judge. Therefore, as noted by the majority, we are not confronted with the question of the propriety of judge's inquiry concerning the status of jury deliberations. Instead, we must consider the propriety of the judge's response to the unsolicited information. The Notes on Use for MAI–CR 1.10 do not prohibit the use of the instruction if the judge knows how the jurors stand. The Notes on Use provide only that the instruction can be given "when appropriate." MAI–CR No. 1.10 Notes on Use (1).

I believe the majority decision ignores the fact that the coercive effect of giving MAI–CR 1.10 under the facts presented is a matter originally considered by the trial court. The decision whether to give an instruction patterned upon MAI–CR 1.10 is discretionary with the trial court and is reviewed on appeal for an abuse of that discretion. *See State v. Doepke*, 536 S.W.2d 950, 951[6] (Mo.App.1976). In the case at bar, the trial judge might have responded to the jury's note in one of three ways. The court could have declared a mistrial and dismissed the jury, but such drastic action was not re-

2. Appellant's brief also contends that the trial court erred in giving MAI–CR 1.10 because the jury had already indicated that further deliberations would be of no use. The fact that the jury has so indicated does not preclude use of MAI–CR 1.10. *State v. Letourneau, supra* at 844[9]; *State v. Phillips*, 511 S.W.2d 841, 844[9] (Mo.1974).

quired.[3] Second, the trial court could have required the jury to continue deliberations without making any statement. Because the jury had just informed the judge that further deliberations would be useless, such a response by the trial judge could confuse the jury. In any event, such a response appears unlikely to have the desired effect, meaningful discussion of the case by the jury. Third, the trial court could, as it did, give MAI–CR 1.10, urging the jury to deliberate further but cautioning the members of the jury to abide by the evidence, instructions, and their consciences.[4] I do not believe that giving such an instruction was an abuse of the trial court's discretion.

Although the precise issue involved in this case has never been determined, instructions similar to Instruction Number 17 have been upheld on appeal despite the trial court's awareness of the status of the deliberations. *State v. Cochrell*, 492 S.W.2d 22 (Mo.App.1973); *State v. Taylor*, 508 S.W.2d 506 (Mo.App.1974); *State v. Edwards*, 536 S.W.2d 193 (Mo.App.1976). By holding MAI–CR 1.10 erroneous under the facts here, the majority decision assumes that only some members of the jury will follow some portions of the instruction. The majority state that the three jurors in favor of acquittal would necessarily view MAI–CR 1.10 as an exhortation to reconsider their votes. I see no reason why the nine jurors in favor of conviction would not also consider MAI–CR 1.10 as an exhortation to reconsider *their* votes. In addition, the majority opinion assumes and speculates the jury did not follow the whole instruction. I see no reason to assume that those portions of MAI–CR 1.10 instructing jurors to try to come to a decision are more likely to be followed than those portions of MAI–CR 1.10 advising the jurors to adhere to the law, the evidence, and their consciences. The jurors are instructed not to "agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue." I do not believe we should assume and speculate that jurors would fail to follow this portion of the instruction.

Finally, a verdict is not shown to be coerced simply because the jury reaches a verdict shortly after receiving MAI–CR 1.10. *State v. Cook*, 512 S.W.2d 907, 909[5] (Mo.App.1974).

I would affirm.

---

**3.** Mistrial is a drastic remedy to be exercised only in extraordinary circumstances. *State v. Letourneau, supra* at 844[8].

**4.** The instruction here involved, Instruction Number 17, reads as follows:

"It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts, however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."