**STATE of Missouri, Respondent,**

v.

**Bruce CUMMINGS, Appellant.**

**No. 41684.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 3, 1981.

James Porter, Asst. Public Defender, Philip Heagney, St. Louis, for appellant.

George A. Peach, Circuit Atty., St. Louis, John Ashcroft, Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Presiding Judge.

Defendant appeals from a jury conviction for stealing, § 560.156, RSMo 1969. Pursuant to the Second Offender Act, § 556.280, RSMo 1969, defendant received a sentence of nine years imprisonment. The judgment is reversed and remanded.

Seven instances of alleged trial court error are raised on appeal. However, because this case is remanded for a new trial it is unnecessary to resolve Points on Appeal I, II and VI relating respectively to the timing of the filing of the amended information, the failure to endorse a state's witness, and alleged prejudicial remarks made during closing arguments for the reason that they should not reoccur upon retrial.

Because Point III, IV and V deal with the sufficiency of the evidence we set forth the facts in the light most favorable to the state. *State v. Nichelson*, 546 S.W.2d 538, 542 (Mo.App.1977); *State v. Thompkins*, 515 S.W.2d 808, 812 (Mo.App.1974). We find the evidence establishes that on the morning of July 28, 1977, Arthur Richter, business manager of Stivers Lincoln-Mercury parked a brown 1977 Lincoln Town Car on the dealership lot in St. Louis County. Richter's employer had given him use of the automobile. Richter discovered it missing early that afternoon. At approximately 3:15 p.m. that same afternoon, the defendant entered a warehouse at 1831 Chouteau in the City of St. Louis. Unbeknownst to defendant the warehouse was the site of an undercover fencing operation, known as "Operation Score," conducted by the St. Louis Police, the Federal Bureau of Alcohol, Tobacco and Firearms and the Federal Bureau of Investigation. All transactions at the warehouse were videotaped. The videotape of the immediate offense, No. 527, has been filed as a supplemental transcript.[1]

After the defendant entered the warehouse, he spoke with Officer Victor Herbert, a special agent with the Federal Bu-

---

1. It is unusual that no transcript of the videotape was prepared, nor was the tape marked for identification or admitted into evidence. However, we have viewed the videotape and will consider its probative value because both defendant and the state requested that we treat it as a supplemental transcript.

reau of Alcohol, Tobacco and Firearms, and Officer Richard Sisco, a detective with the St. Louis Police Department. Both officers Herbert and Sisco were working undercover as counter men. No one saw the defendant drive up nor was anyone seen entering the warehouse with the defendant. The defendant told Agent Herbert that he had a 1977 Lincoln Town Car for sale. When asked how long he had it, defendant replied, "I just got it. It's off the lot. It ain't hot yet ... I haven't had it long at all." Detective Sisco went outside with the defendant to examine the car. After they both came back inside, the defendant was offered $250 for the car, to which he replied, "I don't think they're going for this ... I got to run down there and check with them. I'll be back in less than 20 minutes." Defendant put down the money which he had been offered, left the warehouse and was observed by Officer Russell Whitener driving the Lincoln down an alley next to the building. Defendant returned six or seven minutes later, accepted the money and left. The car was then brought into the warehouse and ultimately returned to the victim. All three officers, Herbert, Sisco and Whitener, identified the defendant as the man they had seen driving the car and negotiating its sale.

We will discuss Points III and IV together. In Point III, defendant charges that there was insufficient evidence to establish that he stole the automobile or that he acted with others in stealing the automobile as charged in the substituted information in lieu of indictment. Consequently, defendant argues the trial court erred in overruling defendant's motions for acquittal. In Point IV, defendant argues it was error to include "acting with others" in Instructions 6,[2] 7[3] and 8.

■ As expressed earlier, we must review the evidence in the light most favorable to the state. All evidence and inferences to the contrary are to be disregarded. An appellate court's function is not to substitute its judgment for that of the jury but only to determine whether the evidence and inferences are sufficient to make a submissible case. *State v. Nichelson,* 546 S.W.2d at 542. Additionally, where circumstantial evidence is relied upon, the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt. They must be inconsistent with defendant's innocence and exclude every reasonable hypothesis of his innocence. *State v. Ramsey,* 368 S.W.2d 413, 416 (Mo. banc 1963).

■ Defendant argues that because he was charged with stealing and not with possession of stolen property and there was no direct evidence to show that defendant took the Lincoln off the lot or that he was present when the automobile was stolen, his motions for acquittal should have been granted. We do not agree. Even though the evidence did not directly establish defendant committed the crime for which he was charged, defendant's active participation in stealing the automobile was proved by inference. *State v. Arnold,* 566 S.W.2d 185, 187 (Mo. banc 1978). It has long been held that the unexplained possession of recently stolen property gives rise to an inference of guilt sufficient to sustain a conviction of stealing the property. *State v. Arnold,* 566 S.W.2d 185, 187 (Mo. banc 1978); *State v. Chase,* 444 S.W.2d 398, 402–403 (Mo. banc 1969). In *State v. Chase,* the stolen property was found in defendant's possession 14 days after it had been stolen. Here defendant's acknowledgments that he

---

**2.** Instruction 6, MAI-CR 2.10, stated that, "All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them."

**3.** Instruction 7 was based on MAI-CR 7.70 as modified by MAI-CR 2.14. This instruction was

the state's verdict director which besides charging that the jury had to find that "the property was taken by the defendant or others, also stated that the jury had to find, "the defendant knowingly and intentionally aided or encouraged the persons who engaged in the conduct submitted in the above paragraphs." Instruction 8 was the converse of Instruction 7.

had just obtained the car, that he knew the car was not yet "hot" and that it was just "off the lot" coupled with his possession of the car a mere 2 to 3 hours after it was stolen was sufficient evidence to support the charge of stealing the car.

■ It is also clear that the state presented evidence sufficient to justify submission of the instructions concerning acting with others. The evidence shows that when the undercover officers offered defendant $250 for the automobile, defendant responded, "I don't think they're going for this. I got to run down . . . and find out what they want." Whereupon, he left the warehouse with the apparent intent of conferring with his partners. When he returned, he was asked by Officer Sisco whether *they* agreed to accept the offer of $250. He replied "yeah," took the money and left. Without the defendant's incriminating statements and actions we concede that a reference to acting with others would not be justified as all the other evidence was that defendant was acting alone. However, the inference which clearly arises from the above evidence is that defendant's accomplices were waiting nearby and before he could accept the offer he had to receive their approval. Defendant returned from the meeting with their apparent consent to a price of $250 and the transaction was consummated. Coupling defendant's actions and statements with his possession of the car within three hours of the theft, it is reasonable to infer that defendant acted with others to perpetrate the crime. Therefore, submission of the instructions concerning acting with others was proper.

■ In Point V, appellant charges that the trial court erred in giving the second paragraph of MAI-CR 2.10. This part of the instruction charged that the "presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence." MAI-CR 2.10. Our discussion above shows the jury could have found that the defendant actively participated in stealing the automobile. Further, the evidence shows that when asked how long he had been in possession of the car defendant responded, "I haven't had it long at all" and, "It's off the lot." The jury could reasonably infer that in answering defendant spoke from personal experience and that he was present when the car was stolen. Under the circumstances submission of the second paragraph of MAI-CR 2.10. was proper, because circumstantial evidence established that it was likely that defendant was present or near the scene of the crime. MAI-CR 2.10 Notes on Use 2 and 5. The remainder of Point V relating to the prejudicial effect of a clerical error in Instruction 7 which referred to the car being stolen in the City rather than the County of St. Louis need not be addressed as the same should not happen on retrial.

As alluded to above, this case must be reversed and remanded for a new trial. The reason for so disposing of this action is the trial court erred in giving MAI-CR 1.10, the "hammer."

The record reveals that at approximately 12:32 p.m. the jury retired to deliberate. The jury foreman sent a note, at 2:05 p.m., to the trial judge indicating one of the jurors couldn't send anyone to jail regardless of guilt.[4] The judge instructed the jury to continue to deliberate. At 3:30 p.m. the jury returned a verdict of guilty. When the jury was polled, the first four veniremen stated they agreed with the verdict. However, when Juror Coleman, the fifth juror, was asked whether the guilty verdict was her verdict the following transpired:

Juror Coleman: I guess so.

The Court: Well, now, hold on, Ma'am.

Juror Coleman: I'm going along with everybody else because I was helping everybody out.

---

4. The full note reads: "Your Honor: After two votes, one juror has proclaimed to the rest of us that they couldn't send anyone to jail for

any reason regardless of what crime had been committed. This is an obvious roadblock to the settling of this case." /s/ Foreman.

The Court: Do you agree with this verdict, ma'am.

Juror Coleman: No.

The court then asked the foreman how the jury stood numerically. The court also stated that in answering the question the foreman should not state which result the jury favored. The foreman answered that the jury stood eleven to one. At that point, 3:40 p.m., the judge gave MAI-CR 1.10.[5] After the jury retired to re-deliberate the defendant immediately demanded a motion for a mistrial which was overruled. Approximately 10 minutes later, at 3:50 p.m., the jury returned a second guilty verdict.

■ There is no question that the giving of the hammer instruction is discretionary with the trial judge. *State v. McAllister*, 468 S.W.2d 27, 30 (Mo.1971); *Cole v. State*, 573 S.W.2d 397, 400 (Mo.App.1978); *State v. Carroll*, 562 S.W.2d 772, 773 (Mo.App.1978). However, defendant argues that the effect of giving MAI-CR 1.10 under the circumstances was coercive and an abuse of discretion. We agree. In *State v. Sanders*, 552 S.W.2d 39 (Mo.App.1977), the court was confronted with a situation not unlike that presented in the case at bar. The trial court was informed that the jury was split 9 to 3 in favor of conviction. Subsequently the court gave the "hammer" instruction. Ten minutes later, the jury returned a verdict of guilty. By changing the number of jurors involved, the following passage from *Sanders* expresses exactly our opinion as to the propriety of the trial court's action:

Basic principles of jury trials require jurors to perform their role free from extraneous factors. In the eyes of many jurors the trial judge can do no wrong; his word is law and jurors are sensitive to what he says and does . . . . Given to deliberating jurors who have not indi-

cated which party they favor, the instruction is persuasive but not necessarily coercive. But here [one juror] was for acquittal and . . . knew the judge was aware of [her] minority position. *To [her]* the judge's expressed desire for a unanimous verdict could mean but one thing—that he felt [the juror] should reconsider [her vote]. We hold that under this particular circumstance the hammer instruction deprived [this juror] of the independence of thought to which all jurors—and the litigants—were entitled.

*State v. Sanders*, 552 S.W.2d at 41.

■ The state argues that this case is unlike *Sanders* because the trial court did not know whether the jury favored guilt or innocence when the hammer was given. This position is untenable. After the trial judge's initial inquiry of the jurors following the announcement of a guilty verdict, he knew that four jurors favored conviction and one was opposed. Upon further inquiry the judge was informed, by the foreman, that the entire jury was divided 11 to 1. Under the circumstances it was elementary that 11 jurors favored and 1 was opposed to conviction. The trial court had to know Juror Coleman was the lone dissenter. The trial court stated at the time it was speculative to reach that conclusion. However, it was the only reasonable conclusion that could have been reached.

■ The state also argues that there was no coercion because the lone juror for acquittal only had qualms about punishment but not about guilt or innocence. The state contends this proposition is supported by the note which the jury foreman sent to the judge earlier in the afternoon. However, this note did not identify the juror to whom it referred. Further, when the judge in-

---

**5.** The full instruction reads: "It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you

in agreeing upon the facts however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."

quired whether Juror Coleman agreed with the verdict she declined. She stated in open court that she did not agree with the verdict and was just "going along with everybody else." She said nothing about an aversion to imprisonment. It would be pure speculation to conclude that Juror Coleman's vote was not related to guilt or innocence.

We note that since the time this case was argued, the Western District of the Missouri Court of Appeals in a per curiam opinion, *State v. Johnson*, 610 S.W.2d 101 (Mo.App. 1980), has held:

> [B]oth the requirement of continued or further deliberations, or by giving of MAI-CR 1.10, (the so-called "hammer instruction") to a jury, subsequent to disclosure to the trial judge that the jury is deadlocked and the vote on how the jurors stand on the issue of guilt or innocence, or conviction or acquittal, constitutes prejudicial error. (Court's own emphasis).

In the immediate case we do not have a situation in which the jury was deadlocked in deciding upon defendant's guilt or innocence. Thus, *Johnson* is not directly applicable. Further, we decline to hold that the trial court always commits prejudicial error by giving the hammer instruction when the judge knows how the jury stands on the issue of guilt or innocence. Each case must turn on its facts and circumstances. The facts and circumstances of this case clearly establish coercion.

Reversed and remanded for new trial.

WEIER and GUNN, JJ., concur.