**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Larry Ray MARSH,
Defendant–Appellant.**

No. 16398.

Missouri Court of Appeals,
Southern District,
Division One.

July 17, 1990.

Mary K. Anderson, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Judge.

Appellant Larry Ray Marsh was convicted of the offense of forcible rape, § 566.030,[1] and burglary in the first degree, § 569.160. He appeals alleging that the trial court committed error in the following respects: (1) the trial court erred in granting a motion by the state for production of fingerprints and overruling appellant's motion in limine to exclude testimony based upon fingerprints of appellant, and in denying appellant's motion for continuance; and (2) the trial court erred in giving Instruction Nos. 14 and 15 during the course of the jury's deliberations following determinations that the jury had not reached agreement as to the guilt or innocence of appellant (Instruction No. 14), and, after the jury later reached agreement that appellant was guilty, that the jury had not reached agreement as to punishment (Instruction No. 15). Appellant asserts he was thereby denied due process of law and that he did not receive a fair trial. This court affirms.

A detailed recital of the evidence presented at trial is unnecessary. The following facts and circumstances, together with those stated later in this opinion with respect to the individual points raised on appeal, are sufficient to determine the issues presented.

On April 11, 1989, the state filed a motion to require appellant to produce fingerprints for analysis. The motion alleged that a set of latent fingerprints was taken from the crime scene and that those fingerprints had been matched with fingerprints of appellant that were taken in 1976. The state's motion requested the taking of a new set of fingerprints in order to eliminate the need to call several witnesses at trial for purposes of identifying and verifying the 1976 fingerprints. The motion asserted that this procedure would simplify the issues at trial.

On the morning of April 13, 1989, the trial court sustained the motion to require appellant to produce fingerprints. The trial court ordered that the fingerprints be produced that day. The state was directed to give defense counsel an oral report regarding the comparison of the "new" fingerprints with the latent fingerprints taken from the crime scene. That oral report was to be given not later than 3:00 p.m. the same day. The state was also directed to provide defense counsel with a written report of the fingerprint comparison by noon, April 14. The trial of the case was scheduled to commence April 17.

On the morning of April 17, appellant's counsel filed a motion entitled, "Motion in Limine—Fingerprint Comparison," by which appellant sought to exclude any evidence of comparison of those fingerprints taken from appellant on April 13 with the latent fingerprints taken from the crime scene. After hearing oral argument, the trial court overruled that motion in limine. Defense counsel then filed an application for continuance seeking to continue the trial of the case "to secure an independent fingerprint analysis." The trial court denied the application for continuance and advised defense counsel, "but if you wish to have a recess in the trial so that your fingerprint expert can examine them and be prepared to testify I'd be able to give you at least a one day continuance this week, probably, or a one day recess this week after we select the jury. So you can be thinking about that."

---

1. All references to statutes are to RSMo 1986 unless otherwise stated.

The trial court then proceeded with the trial of the case. Voir dire began. At its conclusion and after jurors were selected, defense counsel requested what she characterized as "the one day recess offered by the Court to have the fingerprints analyzed by the defendant's own fingerprint examiner." That request was granted and the trial was recessed until 1:30 p.m. the following day, at which time trial resumed.

Appellant's first point on appeal is directed to the granting of the state's motion for the production of fingerprints, the denial of his "Motion in Limine—Fingerprint Comparison" and the denial of his request for a continuance.

■ Rule 25.06(B)(3) permits a court to order that a defendant in a criminal case be fingerprinted. This may be done upon motion by the state. A showing of good cause is required. Upon such a showing, subject to constitutional limitations and any other safeguards the court deems appropriate, such a request may be granted.

A request to fingerprint a defendant has been granted and upheld in similar circumstances to those in this case. In *State v. Smith*, 726 S.W.2d 418, 420 (Mo.App.1987), latent fingerprints taken from a crime scene were matched with fingerprints previously taken from a defendant. The technician who had taken the fingerprints that were compared with the latent fingerprints from the crime scene, however, did not recognize the defendant as the person from whom he had taken the fingerprints on the prior occasion. A request by the state to take a current set of fingerprints from the defendant was granted. A current set of fingerprints was taken, and at trial both sample sets of fingerprints were admitted in evidence. There was expert testimony that the set of latent fingerprints taken from the crime scene matched both of the sample sets, the current one and the prior one. The court held that there was sufficient good cause shown for the trial court to have granted the state's request to take the fingerprints of the defendant. *Id.* at 421.

■ Although the reasons for taking a second set of fingerprints in this case are not the exact same reasons for taking the second set in *Smith*, there are similarities between the cases. In both cases, latent sets of fingerprints were taken from a crime scene. In both cases, the taking of a second set of fingerprints substantiated the identification of the defendant so as to remove doubt that he was the person whose latent fingerprints were removed from the crime scene. The trial court did not err in granting the state's motion for production of appellant's fingerprints. The state's showing of good cause was sufficient. Adequate safeguards were provided. Appellant's due process rights were not violated nor did the granting of that motion deny him a fair trial.

Appellant's next complaint, his assertion that the trial court erred in denying the "Motion in Limine—Fingerprint Comparison," is not cognizable on appeal. The pretrial ruling on a motion in limine is interlocutory. *State v. Dee*, 752 S.W.2d 942, 946–47 (Mo.App.1988). "The denial of a motion in limine preserves nothing for appeal." *State v. Vincent*, 785 S.W.2d 805, 808 (Mo.App.1990).

■ The final complaint set forth in appellant's first point on appeal is that the trial court erred "in refusing to grant appellant's motion for continuance filed on April 17 ... in that because of the time constraints thus imposed appellant could not adequately analyze this evidence with its own evidence and prepare a defense." The record on appeal does not support that argument. Defense counsel specifically stated that she had "a fingerprint expert" available to examine the fingerprint materials which the state anticipated using and did use at trial. Based upon that assurance, the trial court granted a lengthy recess (from 2:26 p.m., April 17, until 1:30 p.m., April 18) to permit the fingerprint materials the state planned to use at trial to be examined by appellant's expert. Possession of the items for examination was delivered to defense counsel. The items were returned to the state's laboratory personnel at 8:00 a.m., April 18, five and one-half hours before appellant's trial was scheduled to resume. No request for fur-

ther time in which to review the materials was made nor was any complaint made that there had been insufficient time to adequately review the fingerprint materials.

Appellant cites various cases for the proposition that a criminal defendant is entitled by pretrial discovery, as a matter of due process and fundamental fairness, to prepare for trial and avoid surprise.[2] He also recognizes that disclosure of evidence shortly before trial is satisfactory if an adequate opportunity is provided in order to review that evidence before it is introduced, *citing State v. Neverls*, 702 S.W.2d 901, 903 (Mo.App.1985). The principles appellant asserts are correctly stated. However, in this case, those principles were not violated. Appellant's first point is denied.

■ Appellant's second point is directed to instructions that were given to the jury during the course of its deliberations. The jury began its deliberations April 20, 1989, at 11:32 a.m. At 5:13 p.m. the trial court had the bailiff return the jury to the courtroom. The judge inquired of the jury foreman whether the jury had reached a decision with respect to guilt on either count. The jury foreman answered that they had not. The judge then read the following instruction to the jury:

### Instruction No. 14

You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he does not believe beyond a reasonable doubt to be true.

The jury returned to the jury room at 5:16 p.m. for further deliberations.

At 9:48 p.m. the jury was again returned to the courtroom. The judge inquired whether the jury had arrived at a verdict on either count. The jury foreman advised the court that they had not. The jury foreman, following inquiry by the trial court, then stated that the jury had "arrived at a verdict" but had not "arrived at punishment." The judge told the jury that he anticipated having further instructions for them "in a minute." The jury was asked to again return to the jury room. The attorney for the state and defense counsel were advised by the judge "[t]hat there has been due deliberations. Therefore the Court intends to draft an instruction following MAI–CR 3d 312.02."

At 10:15 p.m. the jury was brought back to the courtroom. The following questions were asked the jury foreman (Juror Sutton) and the following responses given:

THE COURT: Ladies and gentlemen of the jury, I'm going to ask you a series of questions now and the foreman should respond. First of all, as to count one has the jury unanimously reached a decision finding the defendant either guilty or not guilty? That would be yes or no.

JUROR SUTTON: Yes, Your Honor, we have.

THE COURT: If your answer is yes then indicate whether you have found the defendant guilty or not guilty on count one.

JUROR SUTTON: We have determined that he is not guilty on count one.

THE COURT: You say not guilty on count one?

JUROR SUTTON: On Instruction Number 5.

THE COURT: All right. As to the Instruction Number 6 have you reached a decision as to whether the—that is a unanimous decision as to whether the defendant is guilty or not guilty?

JUROR SUTTON: Yes, Your Honor, we have.

2. Appellant cites *State v. Wilkinson*, 606 S.W.2d 632, 636 (Mo. banc 1980), *State v. Sykes*, 628 S.W.2d 653, 656 (Mo.1982), and *State v. Scott*, 647 S.W.2d 601, 606 (Mo.App.1983).

THE COURT: And is that a finding of guilty or not guilty?

JUROR SUTTON: Guilty.

THE COURT: All right, Now, as to count one under Instruction Number 6, then, has the jury unanimously agreed upon punishment?

JUROR SUTTON: No, Your Honor, we have not.

THE COURT: All right. Then as to count two let me ask you, has the jury unanimously reached a decision finding the defendant either guilty or not guilty?

JUROR SUTTON: Yes, Your Honor, we have.

THE COURT: And is that a finding of guilty or not guilty?

JUROR SUTTON: Guilty, Your Honor.

THE COURT: All right. And has the jury unanimously agreed upon punishment as to count two?

JUROR SUTTON: No, Your Honor, we have not.

THE COURT: All right. Now, as to count one on Instruction Number 6 please indicate whether you as the foreman believe the jury will reach an agreement on the question of punishment if you're given more time?

JUROR SUTTON: Your Honor, if you direct us to go back to the jury room and arrive at a decision I can assure you that we will make every effort to do so. We have deliberated a great deal on punishment.

THE COURT: I understand.

JUROR SUTTON: We have not come to a unanimous decision.

THE COURT: All right. As to count two do you believe if you're given more time you could agree as to the issue of punishment?

JUROR SUTTON: Count one or count two?

THE COURT: Count two.

JUROR SUTTON: Yes, sir, I believe we could on count two.

THE COURT: All right. Because of the passage of time the Court is—and because of your responses to the Court's questions, I will now give you Instruction Number 15, I will read it to you.

The judge then read the following instruction to the jury:

### Instruction No. 15

The Court will now read to you an additional instruction which will be handed to you with additional forms of verdict.

If you unanimously find the defendant guilty as to a particular Count you should fix his punishment as to that Count. If, however, after due deliberation, you find the defendant guilty as to a particular Count, but are unable to agree upon his punishment as to that Count, you will complete the verdict forms so stating, and in that event the Court will fix the punishment.

You must bear in mind that under the law it is the primary duty and responsibility of the jury to determine whether the defendant is guilty or not guilty as to each Count submitted against the defendant, and if he is guilty as to any Count submitted against him to fix the punishment as to the Count.

The jury departed the courtroom at 10:20 p.m. for further deliberations. At 10:35 p.m. they returned to the courtroom and the jury foreman advised the judge that the jury had "arrived at a verdict." The jury found appellant guilty of the offenses charged in both Counts I and II. It assessed his punishment at confinement for a term of 15 years on Count I and at confinement for a term of 5 years on Count II. After polling the jury, the judge accepted those verdicts and discharged the jury.

By his second point on appeal, appellant alleges that the trial court committed errors by giving Instruction Nos. 14 and 15. He alleges that those instructions "were coercive and encouraged the jurors to compromise their beliefs and capitulate to verdicts in which they did not believe." Appellant alleges that he was thereby "denied due process and a fair trial by a fair and impartial jury."

In support of his claim of trial error, appellant cites *State v. Cummings*, 612 S.W.2d 807 (Mo.App.1981), and *State v.*

**692**

*Sanders*, 552 S.W.2d 39 (Mo.App.1977). However, appellant's reliance on *Cummings* and *Sanders* is misplaced. In each of those cases, before the trial judge gave comparable instructions to the one given in appellant's case as Instruction No. 14, and about which appellant now complains, the judge was told the numerical division of the jury. In *Cummings* the trial judge had asked the foreman how the jury stood numerically and was told that the jury stood 11 to 1. 612 S.W.2d at 811. In *Sanders* the jury had advised the trial judge by a note from its foreman that "[t]here are 9 for guilty and 3 for not guilty." 552 S.W.2d at 40. In *Cummings* and *Sanders*, each jury returned a guilty verdict. Each of the verdicts was returned approximately ten minutes after the additional instruction was given.

In this case, the trial judge carefully avoided the receipt of information regarding numerical breakdown of the jury before giving Instruction No. 14. The jury had deliberated more than five and one-half hours before Instruction No. 14 was given.[3] After that instruction was given, the jury continued its deliberations for an additional four and one-half hours without reaching an agreement as to both guilt and punishment. Finally, Instruction No. 15 was given.

Before giving Instruction No. 15, the trial court meticulously followed the procedure recommended in the Notes on Use to MAI–CR3d 312.02 for purposes of determining if the jury was deadlocked. The jury thereafter returned its verdicts and agreed as to punishment on both counts.

Both Instruction Nos. 14 and 15 were consistent with MAI–CR3d 312.10 and 312.-02, respectively. The record on appeal does not disclose facts that indicate the jurors were coerced by those instructions or that the jurors were encouraged to or did capitulate to verdicts in which they did not believe. No error was committed by the trial court in giving those instructions. Appellant's second point is denied.

The judgment and sentence of the trial court is affirmed.

CROW, P.J., and PREWITT, J., concur.

---

3. The giving of instructions comparable to Instruction No. 14 has been approved in other cases after the jury had deliberated for the times indicated: *State v. Hyzer*, 729 S.W.2d 576, 578 (Mo.App.1987) (the jury had deliberated over one hour); *State v. Sutton*, 699 S.W.2d 783, 786 (Mo.App.1985) (the jury had deliberated more than five hours); and *State v. Smith*, 686 S.W.2d 43, 45 (Mo.App.1985) (the jury had deliberated over two and one-half hours).