**STATE of Missouri, Respondent,**

v.

**Ruby JAMERSON, Appellant.**

**Ruby JAMERSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 57115, 58664.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 21, 1991.

Ellen H. Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Ruby Jamerson, appeals her conviction in the Circuit Court of St. Louis County of murder in the first degree, RSMo § 565.020.1 (1986), for which she was sentenced to life imprisonment without possibility of parole. Appellant also appeals from the denial of her Rule 29.15 motion after an evidentiary hearing. We affirm.

The evidence, viewed in the light most favorable to the verdict, *State v. Feltrop*, 803 S.W.2d 1, 5 (Mo. banc 1991), reveals that the victim, Horace Jamerson, met the appellant in July, 1981, when he found her lying beaten and unconscious on a sidewalk in the City of St. Louis and took her to the emergency room for treatment. The victim and appellant dated and then married in 1984.

The relationship between victim and appellant's two sons, Aaron and Donyae Smart, was, to put it mildly, strained. They argued several times and the victim and Donyae Smart were involved in some physical confrontations during these arguments. At some time before the Spring of 1987, the relationship between the boys and the victim reached a breaking point and the boys were placed with appellant's relatives. Apparently unhappy without her sons in the house, appellant and Donyae Smart soon began discussing ways to kill the victim.

In the Spring of 1987, appellant and Donyae enlisted the aid of two of Donyae's friends to stage a burglary. There is conflicting testimony in the record as to whether the intent was to shoot the victim during the burglary or, knowing that the victim had a heart problem, merely shoot in his direction to scare him. In any event, this attempt to kill the victim was unsuccessful.

The appellant next approached a friend of hers and offered him $1000.00 to kill her husband. Although the man initially agreed to kill the victim, he later backed out.

Finally, on July 3, 1988, the appellant picked Donyae Smart up from work and they discussed killing her husband. Additional discussions were had the next day. The two of them decided that Donyae and one of his friends would use knives to kill the victim. The friend was needed to help Donyae move the body after the murder. After the body was moved, appellant was to wait until the next day at which time she would call the police and report her husband missing.

That evening, appellant waited until the victim fell asleep. She then told Donyae and his friend, Antonio Smith, who were waiting outside, that she left the basement door to the residence open and that the knife they were to utilize in the murder was in the basement area. She told them to stay in the basement, that she had to run an errand, and that when she returned from her errand she would leave the residence again. It was at that time that they were to commit the murder.

The appellant went to the bank and withdrew $100.00. She then returned to the residence to discover the two boys outside. When she asked why they were not in the basement, the boys told her "we did it already." The boys then told the appellant that the victim was too heavy to carry, but they had made the house appear as if it had been burglarized.

Appellant had the boys get into the car and drove them into the City of St. Louis. She then gave them the $100.00 she had

withdrawn from the bank. Appellant next went to her sister's house for about an hour and one-half, returning home at about 2:00 a.m. Upon entering the house, she observed the victim laying in the room with a large abdominal wound. The police were soon summoned.

Dr. Mary Case, a medical examiner for St. Louis County, testified that the victim had 28 stab wounds or cuts.[1] Three of these wounds were defensive wounds. The victim was stabbed three times through the heart and twice through the lung. One wound transected the vocal cord and penetrated to the bone. Another wound passed into the peritoneal cavity[2] and through a loop of the bowel. The small intestine and a portion of the bowel were clearly visible protruding from this wound. Dr. Case testified that the five wounds to the left chest area, with significant contribution by the other wounds, caused the victim to bleed to death.

Appellant was indicted on July 30, 1988. An information was filed January 26, 1989. The trial commenced on June 12, 1989, and continued for four days until June 15, 1989. The jury returned its verdict later that same day.

Appellant filed a timely pro se Rule 29.15 motion on November 6, 1989. A timely, verified amended motion was filed on January 8, 1990. An evidentiary hearing was held on April 20 and 24, 1990, and, on May 30, 1990, the motion court handed down its findings of fact and conclusions of law denying appellant's Rule 29.15 motion. This appeal followed.

■ Appellant first contends that the trial court erred in accepting the jury's verdict and overruling appellant's motion for a mistrial because the verdict resulted from judicial coercion of a juror. We disagree.

The jury retired to deliberate at about 11:00 a.m. on June 15, 1989. After deliberating for almost six hours, the jury announced it had reached a verdict. The foreman tendered a completed verdict form finding appellant guilty of murder in the

first degree, and the appellant requested a poll of the jury.

THE COURT: Ladies and Gentlemen, when you hear your name called, will you answer to the specific question directed to you by Mr. Enright.

MR. ENRIGHT: Darlene Compton, is that your verdict?

JUROR COMPTON: Yes.

MR. ENRIGHT: Tawnya Yetter, is that your verdict?

JUROR YETTER: Yes.

MR. ENRIGHT: Kurtis Kain, is that your verdict?

JUROR KAIN: Yes.

MR. ENRIGHT: Susan Girardier, is that your verdict?

JUROR GIRARDIER: Yes.

MR. ENRIGHT: Robert W. Brown, Junior, is that your verdict?

JUROR BROWN: Yes.

MR. ENRIGHT: Olivian Ann Draper, is that your verdict?

JUROR DRAPER: Yes.

MR. ENRIGHT: Anthony Clark, is that your verdict?

JUROR CLARK: No.

The court then requested that counsel approach the bench. Counsel for appellant requested a mistrial, but stated that, barring a mistrial, "I think we need to complete the polling and see if anyone else says that [they disagree with the verdict] ... the next logical step would be to re-poll the jury and see what happens because the question as asked I think is clear ..." The court agreed, finished the polling and then re-polled the jury. The court then addressed the jury: "Ladies and Gentlemen, I will not accept this verdict on the record at this time. We are going to send you back into the jury deliberation room for further deliberations." The jury returned to the jury room and returned two hours later with its final verdict of guilty.

Appellant claims that re-polling the jury and sending the jury back to deliberate further coerced Juror Clark into agreeing

---

1. A stab wound is a wound deeper than it is long; a cut is longer than it is deep.

2. The peritoneum is a membrane that holds the abdominal cavity in place.

with the other jurors. Appellant cites several cases in which the trial court submitted the hammer instruction to the jury after discovering how the jury stood on a jury verdict. See *State v. Cummings*, 612 S.W.2d 807 (Mo.App., E.D.1981); *State v. Sanders*, 552 S.W.2d 39 (Mo.App., St.L.D. 1977). We initially note that, to the extent *Sanders* held that a trial judge commits error by giving a hammer instruction when it is aware of how the jury stands, it is no longer good law in the State of Missouri. *State v. Broadux*, 618 S.W.2d 649, 653 (Mo. banc 1981). We also note that *Cummings* and *Sanders* are clearly distinguishable from the case at hand. In *Sanders*, a jury split by a 9 to 3 vote was read the hammer instruction and returned to deliberate further. The jury returned ten minutes later with a unanimous guilty verdict. *Sanders*, 552 S.W.2d at 40. In *Cummings*, a jury split 11 to 1 was hammered by the trial court and, again, returned after ten minutes of deliberation with a guilty verdict. *Cummings*, 612 S.W.2d at 811. Both courts held that the time factor, in conjunction with the rule that the trial court should not hammer a jury when it is aware of the numerical division, demonstrated coercion. *Sanders*, 552 S.W.2d at 41; *Cummings*, 612 S.W.2d at 811–12. In the present case, no hammer was given to the jury and it did not return a final verdict until two hours after it was asked to continue deliberations. The cases cited by the appellant do not help her and we find no evidence of coercion in the present case.

■ Appellant contends that the present case is controlled by *State v. Conway*, 740 S.W.2d 320 (Mo.App., E.D.1987). We disagree. In *Conway*, the jury returned a guilty verdict on two of three counts. One of the jurors then impeached one of the guilty verdicts. *Conway*, 740 S.W.2d at 323. The trial judge then questioned the juror at length regarding her answer. *Id.* This court held that the repeated questioning of the juror by the trial court coerced the juror into changing her verdict. *Id.* at 324. *Conway* is similar to the present case only to the extent that the polling of the jury revealed the lack of a unanimous verdict. The trial court did not question Juror Clark. Instead, it re-polled the jury and sent the jury back for further deliberations as permitted by Rule 29.01(d). While the trial court probably should have sent the jury back to deliberate further immediately after Juror Clark impeached the verdict, we do not find that its mere re-polling of the jury resulted in a coerced verdict. Point denied.

■ Appellant next contends that the trial court erred in permitting the State to admit certain crime scene and autopsy photographs of the victim in that the probative value of the photographs was outweighed by their prejudicial effect and because they were cumulative. We disagree. As previously noted, the victim was stabbed a total of 28 times. The photographs admitted at trial displayed all of the wounds, including the abdominal wound through which a portion of the victim's lower intestine and bowel was penetrating. We agree that the photographs are gruesome but disagree with appellant on their admissibility at trial.

The trial court is vested with broad discretion in the admission of photographs. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991). "Photographs, although gruesome, may be admitted where they show the nature and location of wounds, where they enable the jury to better understand the testimony, and where they aid in establishing any element of the State's case." *Feltrop*, 803 S.W.2d at 10 (quoting *State v. Murray*, 744 S.W.2d 762, 772 (Mo. banc), cert. denied 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Photographs are also relevant when they depict the condition and location of the body. *Feltrop*, 803 S.W.2d at 10. A photograph is not rendered inadmissible because other evidence may have described what is shown in the photographs, nor is the State precluded from introducing the photograph because the defendant expresses a willingness to stipulate to some of the issues involved. *Id.* Insofar as pictures tend to be shocking or gruesome, it is because the crime is of that sort. *Id.* at 11.

The photographs admitted below show the nature and condition of the victim's body, the nature and condition of the wounds and aided the jury in understanding the testimony of the medical examiner and other State witnesses. In addition, we do not find that the photographs are cumulative. The crime scene and autopsy photographs show different views of the body and corroborate the testimony of different State witnesses. There was no error by the trial court. Point denied.

■ Appellant next claims that the trial court erred in giving an instruction patterned after M.A.I.–CR3d 302.04, which defines proof beyond a reasonable doubt as proof which leaves the jury "firmly convinced" of the defendant's guilt. Appellant claims that this definition dilutes the State's burden of proof. This court is prohibited from declaring an M.A.I. approved instruction as erroneous. *State v. Franklin*, 752 S.W.2d 937, 939 (Mo.App., E.D. 1988). In addition, appellant's argument has been repeatedly rejected by the Missouri Supreme Court. *State v. Murray*, 744 S.W.2d 762, 771 (Mo. banc) cert. denied 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987) cert. denied 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Point denied.

■ Appellant next argues that the trial court erred in failing to, sua sponte, declare a mistrial when the State argued that the victim was a good person who died "a brutal and horrible death," who was loved by others and cared about his family. We note that there was no objection posed at trial to these arguments and review the point for plain error. Rule 29.12.

Relief should rarely be granted on assertions of plain error as to closing argument, for where no objection is lodged, trial strategy is an important consideration and such assertions of error are generally denied without explication. *State v. Dunkins*, 787 S.W.2d 869, 871 (Mo.App., E.D.1990). This is because the absence of objection, requests for admonition to disregard or requests for other relief narrows the trial court's options, requiring unauthorized interference with summation and correspondingly increasing the risk of error by such intervention. *Id.* Such claims of plain error in closing argument will not justify relief unless they are determined to have a decisive effect on the jury. *State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo. banc 1988). We do not find that the State's argument could have possibly had such an impact on the jury and did not rise to the level of plain error. Point denied.

Appellant next challenges the motion court's denial of her Rule 29.15 motion after an evidentiary hearing.

Appellant's first two claims can be disposed of by this court by way of Rule 84.16(b). We have reviewed the transcripts of the trial and of the 29.15 motion hearing with care and have read the parties' briefs. We do not find the evidence sufficient to leave us firmly convinced that the findings and conclusions of the motion court are clearly erroneous; nor do we find that an extended discussion of these matters would have any precedential value. We, therefore, deny them pursuant to Rule 84.16(b).

■ Appellant's final point on appeal is that the motion court erred in using the appellant's responses at her "improper" 29.07 examination before the trial court against her in its findings of fact and conclusions of law. Appellant claims that such use of her responses violates her sixth amendment right to effective assistance of counsel and to her fifth amendment right to remain silent. Appellant challenges the validity of Rule 29.07.

We note that rules of practice, procedure and pleading are promulgated by the Missouri Supreme Court under authority granted by Article V, § 5 of the Missouri Constitution of 1945 as amended in 1976. Such rules have the force and effect of law. Mo. Const. Art. V, § 5 (1976). The validity of the rules is, thus, exclusively within the appellate jurisdiction of the Supreme Court of Missouri. *Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 225 (Mo.App., W.D.1988). The question presented by the appellant is,

thus, not for this court to entertain. Affirmed.

CRIST and AHRENS, JJ., concur.